## TOWN OF WEYAUWEGA *v.* AYLING.

A town in Wisconsin having, pursuant to law, voted to issue its bonds in aid of the construction of a railroad in that State, the bonds bearing date June 1, 1871, and signed by A. as chairman of the board of supervisors, and by B. as town clerk, were issued, and by A. delivered to the railroad company. When sued on the coupons by a *bona fide* holder of the bonds for value before maturity, the town pleaded that the bonds were not in fact signed by B. until July 13, at which date he had ceased to be town clerk, his resignation of that office having been, June 17, tendered and accepted, and his successor duly elected and qualified. *Held,* 1. That the town was estopped from denying the date of the bonds. 2. That in the absence of any thing to the contrary, it must be assumed for all the purposes of this case that the bonds were delivered to the company by A., with the assent of the then town clerk, and that they were, therefore, issued by the proper officers of the town.

ERROR to the Circuit Court of the United States for the Eastern District of Wisconsin.

This was an action by Charles H. Ayling, a citizen of Massachusetts, against the town of Weyauwega, Wisconsin, to recover the amount of overdue and unpaid interest coupons detached from certain bonds issued by that town in aid of the construction of the Wisconsin Central Railroad.

Upon the trial the following facts appeared: —

1. That under and by virtue of chapter 126 of the General Laws of the State of Wisconsin for the year 1869 the legal voters of the town of Weyauwega voted to issue negotiable bonds to the amount of $40,000, to aid in the construction of the Wisconsin Central Railroad.

2. That June 1, 1871, C. M. Fenelon was chairman of the board of supervisors of the town of Weyauwega, and C. A. Verke was the clerk of the said town.

3. That said Verke resigned his office of clerk of said town June 17, 1871; that his resignation was accepted; and on the same day one Francis W. Sackett was elected and duly qualified as such clerk, and entered upon his duties.

4. That Verke, after his resignation as town clerk as aforesaid, changed his residence to Peshtigo, and ceased to be a resident of Weyauwega.

5. That July 13, 1871, Verke signed in Peshtigo, where he then resided, the bonds mentioned in the complaint; that the date in them at the time he so signed them was June 1, 1871.

6. That he did not in fact sign the coupons mentioned in the complaint, or any of them, but that his signature to them, as well as that of Fenelon, the chairman of said town, was lithographed from genuine signatures of Verke and Fenelon.

7. That at the time Verke signed the bonds he was not clerk of the town of Weyauwega, and had not been clerk thereof since June 17, 1871.

8. That July 13, 1871, the date when Verke signed said bonds, said Sackett was the duly and legally qualified clerk of the town.

9. That Fenelon, who signed the said bonds, was at the date he signed the same the chairman of the town of Weyauwega, and as such signed the same.

10. That after the bonds were so signed, they, with the coupons annexed, were issued and delivered by Fenelon, chairman of the town of Weyauwega, to the Wisconsin Central Railroad Company, and came to the hands of the plaintiff, who, prior to their maturity, purchased and paid a full and valuable consideration for them, in good faith, and without notice of any defect in them or the coupons, or the signatures thereto.

The judges were opposed in opinion upon the following questions : —

1. Whether the town-of Weyauwega was estopped from showing the true date the bonds were in fact signed by Verke.

2. Whether the bonds, having been in fact signed by him after he had ceased to be the clerk of the town, and had removed therefrom his place of residence, and become a resident of Peshtigo, in law were or could be valid or legal bonds of the town of Weyauwega.

3. Whether the fact that the bonds bear upon their face the date of June 1, 1871, and purport to be signed on that day by Fenelon, chairman, and Verke, clerk, estops or prevents the town from showing that the bonds were not in fact signed until July 13, 1871, and that on that day Verke was not the clerk of the town of Weyauwega ; and if it does not, whether in law the said bonds and coupons are invalid in the hands of a *bona fide* holder of the same.

Judgment having been rendered in favor of the plaintiff in accordance with the opinion of the presiding justice, the town sued out this writ of error.

The act of 1869 provides as follows : —

"Sect. 4. . . . It shall be the duty of the proper officers in every such . . . town . . . to cause said . . . bonds so voted to be . . . issued and to be paid over or delivered to the said railroad company. . . .

"Sect. 5. For the purpose of giving effect to the provisions of this act, the proper officers of every . . . town . . . mentioned in this act are hereby declared to be . . . the chairman of the board of supervisors and the town clerk in each town."

*Mr. William P. Lynde* for the plaintiff in error.

The town was not estopped from showing the true date at which the bonds were in fact signed by Verke.

The enabling act authorized the chairman of the board of supervisors and the town clerk to execute bonds which should bind the town. Neither one of them could do it alone. The power was conferred upon them in their official capacity, and they were constituted the agents of the town for a special purpose. There can be no doubt that the town has a right to show that the person who signs as town clerk was not such when he executed the bonds, and had no authority to bind the town. *The Floyd Acceptances*, 7 Wall. 666; *Lee v. Monroe & Thornton*, 7 Cranch, 366; *Whiteside et al.* v. *United States*, 93 U. S. 247; *Mayor* v. *Eschback*, 17 Md. 282; *Chisolm* v. *City of Montgomery*, 2 Woods, 594; Story, Agency, sect. 307.

The act authorized the " proper officers " of the town to issue the bonds; and those officers are declared to be the chairman of the board of supervisors and the town clerk. Verke, when the bonds were signed, was neither. He occupied no official position whatever, and his signature could have no greater force or effect than that of any other private citizen. He certainly could not bind the town, of which he was neither an officer nor a resident. 2 Coler, Municipal Bonds, 136; *Head* v. *Providence Insurance Co.*, 2 Cranch, 127; *Freud* v. *Dennett*, 4 Sco. N. R. 583; *McSpeden* v. *The Mayor, &c. of New York*, 7 Bosw. (N. Y.) 606; *Zottman* v. *San Francisco*, 20 Cal. 103.

The power of the town to issue its bonds to aid in the construction of this road being derived entirely from an act of the legislature which declares that they shall be issued by the chairman of the board of supervisors and the town clerk, the mode prescribed is essential to the validity of the bonds, — indeed, there is no power to issue them in any other way, — therefore, having been in fact signed by Verke, after he had ceased to be the clerk, and removed his residence to Peshtigo, the bonds are invalid and do not bind the town.

There is nothing in this record to show that the town or its officers, except the chairman of the board of supervisors, who is one of the wrong-doers, ever knew of the execution of these bonds until this suit was brought, nor to show that the town received any stock or any other consideration for the bonds. It

would seem that they were given to the company as a gratuity. What has the town done or said that should estop it from telling the truth? There is a class of cases in which it has been held that when a power is given to be exercised by certain persons upon conditions precedent, the existence of which they are authorized to ascertain and declare, and they exercise the power, a . holder for value of negotiable securities issued thereunder need not go behind the authority; but in all of them there was express legislative authority to issue the bonds upon those conditions. Of this class are the following cases: *Commissioners of Knox County* v. *Aspinwall et al.,* 21 How. 539; *Bissell et al.* v. *City of Jeffersonville,* 24 id. 287; *Moran* v. *Commissioners of Miami County,* 2 Black, 722; *Mercer County* v. *Hackett,* 1 Wall. 83; *Gelpcke* v. *City of Dubuque,* id. 175; *Von Hostrop* v. *Madison City,* id. 291; *Rogers* v. *Burlington,* 3 id. 654; *Supervisors* v. *Schenck,* 5 id. 772; *Lee County* v. *Rogers,* 7 id. 181.

The distinction between those cases and that now before the court is, that these bonds were not " issued by the body intrusted to do so."

*Mr. Edwin H. Abbot, contra.*

The recital in the bonds estops the town from setting up any defect of execution which does not destroy their genuineness.

Verke's signature as clerk *nunc pro tunc* was a purely ministerial act, which speaks truly from and at the date of the bond. It lacks every essential element of forgery. He was clerk at the date of the bonds. The coupons bore his genuine fac-simile, affixed while he was clerk, and accepted by the town as his signature before his resignation. No one else could have completed, according to commercial usage, the formal certification of them as the obligations of the town.

Yet even if Verke's signing, under the circumstances stated, amounted to forgery, the delivery of the bonds by the proper chief executive officer of the town was such an adoption of the signature as genuine, as ever afterwards estopped the town from impeaching it. *Beaman* v. *Duck,* 11 Mee. & W. 251; *Levy* v. *Bank of United States,* 4 Dall. 234; *Bank of the United States* v. *Bank of Georgia,* 10 Wheat. 332; 2 Daniel, Negotiable

Instruments, sect. 1351; *Woodruff* v. *Munroe*, 33 Md. 146; *Casco Bank* v. *Keene*, 53 Me. 104; *Leach* v. *Buchanan*, 4 Esp. 226; *Greenfield Bank* v. *Crafts*, 4 Allen (Mass), 447; *Union. Bank* v. *Middlebrook*, 33 Conn. 95; *Howard* v. *Duncan*, 3 Lans. (N. Y.) 174; *Brook* v. *Hook*, Law Rep. 6 Ex. 89; *Williams* v. *Bayley*, Law Rep. 1 H. L. 200, 221; *Wilkinson* v. *Stoney*, 1 Jebb & S. 509; *Robarts* v. *Tucker*, 16 Q. B. 577; *Arnold* v. *Cheque Bank*, Law Rep. 1 C. P. D. 578; *Meacher* v. *Fort*, 3 Hill (S. C.), 227; *Hortsman* v. *Henshaw*, 11 How. 177; *Price* v. *Neal*, 3 Burr. 1354; *Cooper* v. *Meyer*, 10 Barn. & Cress. 468; s. c. 5 Mann. & R. 387; *Young* v. *Grote*, 4 Bing. 253; *Ingham* v. *Primrose*, 7 C. B. N. S. 82; *Greenfield Bank* v. *Stowell*, 123 Mass. 196; Bigelow, Estoppel, 397; *Baxendale* v. *Bennett*, Law Rep. 3 Q. B. D. 525, 530.

The directions of the Wisconsin statute are mandatory. The town cannot set up its own neglect to comply with them, in order to defeat its just debt by denying the obligation.

The acts of a municipal officer within the scope of his authority in delivering a bond, ministerially defective in its execution, estop the municipal corporation from setting up mere defects in execution when his authority extended to the delivering of a valid obligation of substantially the same form. The same rule of agency applies to towns and individuals.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The first question certified in this case is answered in the affirmative. The legal voters of the town, by a vote duly taken pursuant to statutory authority for that purpose, directed the issue of the negotiable bonds in controversy. As soon as this vote was given, it became the duty of the chairman of the board of supervisors and the clerk of the town to cause the bonds to be made out and delivered to the railroad company. Such was the requirement of the statute under which the vote of the town was taken. The designated officers had no discretion in the premises.

After the vote, an appropriate form of bond and coupons was lithographed and printed, with blanks in the bond for the signatures of the chairman and clerk. As printed, the bonds

bore date June 1, 1871. At that time Fenelon was chairman and Verke clerk. The signatures of these officers were lithographed and printed on the coupons. Before the bonds were actually signed by Verke, he had resigned his office and moved out of the town. Another clerk had been appointed and qualified in his place. Apparently to save the expense of a new lithograph and another printing of the bonds, Verke, after going out of office, affixed his signature to those which had been printed. These bonds so signed by Verke and by Fenelon, who actually was chairman at the time, were taken by Fenelon and delivered to the railroad company. This having been done, Ayling, the defendant in error, purchased the bonds to which the coupons sued on were attached, and paid their full value without notice of any claim of defence to their due execution. Under these circumstances, we think the town is estopped from proving that Verke in fact signed the bonds after he went out of office. If Ayling had put himself on inquiry when he made his purchase he would have found, 1, that the town had authority to vote the bonds; 2, that the necessary vote had been given; 3, that at the date of the bonds Verke was clerk and Fenelon chairman; 4, that their signatures were genuine; and, 5, that the bonds had actually been delivered to the railroad company by Fenelon, who was at the time chairman. If a bank puts out a note for circulation bearing the signature of one who was in fact president of the bank when the note bore date, no one will pretend that it could be shown as a defence to the note when sued upon by a *bona fide* holder, that the signature of the person purporting to be president was affixed after he went out of office. So if one puts out a note purporting to be signed by himself, but which was in fact signed by another having at the time no authority from him, he cannot prove the forgery or want of authority in the signer as against a *bona fide* holder. The reason is obvious. The bank by issuing the note, and the individual by delivering the paper which purported to be his obligation, adopted what they thus put out as their own, and became bound accordingly.

The same principle applies in this case. There is no pretence that the obligation of these bonds is other or different

from that authorized by the voters. So far as the record shows, the town has received and retains the consideration for which they were voted. No bad faith is imputed to any one. It is true the chairman alone made the actual delivery to the railroad company; but the presumption is, that what he did was assented to by the clerk in office at the time. Certainly it could not have been contemplated that, to make a binding obligation, both the chairman and clerk must have been present when the delivery to the railroad company was made; and as the presumption always is, in the absence of any thing to the contrary, that a public officer while acting in his official capacity is performing his duty, it must be assumed for all the purposes of this case that the bonds were delivered to the railroad company by the chairman with the assent of the clerk, and, therefore, that they were issued as negotiable instruments by the proper officers of the town. If the fact was otherwise, it was incumbent on the town to make the necessary proof.

It is unnecessary to answer any of the other questions certified, further than has already been done. The answer to the first question is decisive of the case.

*Judgment affirmed.*