#### OF THE

## TERRITORY OF ARIZONA

#### DURING THE YEAR 1898.

[Civil No. 627. Filed January 26, 1898.]

[51 Pac. 977.]

E. B. GAGE, Plaintiff and Appellant, v. M. H. McCORD et al., Defendants and Appellees.

1. BONDS—FUNDING ACT—ACT CONGRESS JUNE 6, 1896, SEC. 1, BEING 29 STATS. 262, CONSTRUED—JANUARY 1, 1897, NOT LIMIT UPON SALE.—The act of Congress, *supra*, approved June 6, 1896, authorizing the funding of all outstanding obligations of the territory of Arizona, and the counties, municipalities, and school districts thereof, until January 1, 1897, authorizes the funding of all obligations which existed and were outstanding prior to January 1, 1897. Said date is not a limitation upon the sale and disposition of bonds for funding purposes.

2. SAME—SAME—SAME—"ISSUE" DEFINED.—The term "issue," as used in the Funding Act, means the arbitrary date fixed as the beginning of the term for which bonds are to run, without reference to the precise time when convenience or the state of the market may permit of their sale and delivery.

3. SAME—SAME—BOARD OF LOAN COMMISSIONERS—CONTINUOUS BODY— CHANGE OF PERSONNEL—DOES NOT AFFECT BONDS "ISSUED."—The board of loan commissioners is by law made a continuous body, and a change in the personnel of the board, occurring after the execution of bonds and their delivery to the treasurer, cannot affect the validity of these completed acts.

4. SAME—SAME—NEGOTIATION—POWER OF SUCCESSORS IN OFFICE TO NEGOTIATE BONDS ISSUED BY PREDECESSORS.—Bonds signed by the proper officers at their date can be negotiated and sold by their successors in office when there existed authority in the former to issue bonds at the time of signing, and when the authority was continued to the time of delivery.

(227)

5. SAME—SAME — NEGOTIATION — BONDS ISSUED—FORM—EXECUTION — SUFFICIENCY.—Under existing law, the loan commissioners and the territorial treasurer have power and authority to sell and dispose of bonds to fund outstanding obligations of the territory which accrued prior to January 1, 1897, and no new issue of bonds is needed for that purpose; those now in the hands of the territorial treasurer, and signed by the former territorial officials, being in all respects as to form and execution as provided by law.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Webster Street, Judge. Affirmed.

L. H. Chalmers, for Appellant.

C. M. Frazier, Attorney-General, for Appellees.

SLOAN, J.—The appellant brought suit in the court below, as a taxpayer, to enjoin the board of loan commissioners and the territorial treasurer from attempting to sell, hypothecate, or otherwise dispose of certain bonds issued by said board for the funding of territorial indebtedness, under the authority of the act of Congress approved June 25, 1890, and known as the "Funding Act." These bonds are alleged to bear date January 15, 1896, and to have been signed by B. J. Franklin, as governor, C. M. Bruce, as territorial secretary, and C. P. Leitch, as territorial auditor, and to have been countersigned by P. J. Cole, who was then and there the duly qualified and acting territorial treasurer; that, upon the execution of said bonds, they were by said loan commissioners delivered to the said territorial treasurer, and that ever since they have remained in the possession of said territorial treasurer and his successors in office, for disposition as provided by said Funding Act; that, since the execution of said bonds and their delivery to the territorial treasurer, the said persons composing the board of loan commissioners at the date of said execution and delivery have been succeeded in office by the appellees, M. H. McCord, as governor, Charles H. Akers, as secretary, and George W. Vickers, as auditor; and that the territorial treasurer who countersigned the said bonds has been succeeded in office by appellee C. W. Johnstone, who is now the duly qualified and acting territorial treasurer. The complaint alleges that the present board of loan commissioners and the

present territorial treasurer have arranged for the sale and disposition of the said bonds signed by the former loan commissioners and countersigned by the former territorial treasurer, and propose to use the proceeds thereof for funding and satisfying the fundable debts of the territory. The injunction is asked for upon three grounds, as stated in the complaint: First, the board of loan commissioners and the territorial treasurer have, since January 1, 1897, by congressional enactment, ceased to have any power or authority to negotiate, sell, or dispose of bonds for funding purposes; second, that even if the loan commissioners and treasurer have authority at this time to fund the outstanding territorial indebtedness, and for that purpose to dispose of territorial bonds, the bonds in question are invalid, and the officers of the territory have no authority to dispose of the same, because they are not signed by the present loan commissioners, and countersigned by the present territorial treasurer, but by their predecessors in office; third, that the said bonds are invalid, because not in the form as prescribed by law. We will consider these in their order.

In support of the first of these grounds contended for by appellant, reliance is had upon the provisions of the act of Congress approved June 6, 1896, which read as follows:—

"An act amending and extending the provisions of an act of Congress entitled 'An act approving with amendments the funding act of Arizona,' approved June twenty-fifth, eighteen hundred and ninety, and the act amendatory thereof and supplementary thereto, approved August third, eighteen hundred and ninety-four.

"Be it enacted by the senate and house of representatives of the United States of America in Congress assembled, that the provisions of the act of Congress approved June twenty-fifth, eighteen hundred and ninety, and August third, eighteen hundred and ninety-four, authorizing the funding of certain indebtedness of the territory of Arizona, are hereby amended and extended so as to authorize the funding of all outstanding obligations of said territory, and the counties, municipalities, and school districts thereof, as provided in the act of Congress approved June twenty-fifth, eighteen hundred and ninety, until January first, eighteen hundred and ninety-seven, and all outstanding bonds, warrants, and other evidences of in-

debtedness of the territory of Arizona, and the counties, municipalities, and school districts thereof, heretofore authorized by legislative enactments of said territory bearing a higher rate of interest than is authorized by the aforesaid funding act approved June twenty-fifth, eighteen hundred and ninety, and which said bonds, warrants, and other evidences of indebtedness have been sold or exchanged in good faith in compliance with the terms of the act of the legislature by which they were authorized, shall be funded, with the interest thereon which has accrued and may accrue until funded into the lower interest-bearing bonds as provided by this act.

"Sec. 2. That all bonds and other evidences of indebtedness heretofore funded by the loan commissioners of Arizona under the provisions of the act of Congress approved June twenty-fifth, eighteen hundred and ninety, and the act amendatory thereof and supplemental thereto, .approved August third, eighteen hundred and ninety-four, are hereby declared to be valid and legal for the purposes for which they were issued and funded; and all bonds and other evidences of indebtedness heretofore issued under the authority of the legislature of said territory, as hereinbefore authorized to be funded, are hereby confirmed, approved, and validated, and may be funded as in this act provided until January first, eighteen hundred and ninety-seven: provided, that nothing in this act shall be so construed as to make the government of the United States liable or responsible for the payment of any of said bonds, warrants, or other evidences of indebtedness by this act approved, confirmed, and made valid, and authorized to be funded.

"Approved June 6th, 1896."

(29 Stats. 262.)

Stress is put upon the clause "until January first, eighteen hundred and ninety-seven," found in section 1 of the act, as bearing out the view that the purpose and intent of Congress was to limit the time within which the loan commissioners might act, and to require the completion of the work of funding, by the sale and disposition of bonds and the liquidation of the indebtedness allowed by this and prior acts to be funded, by January 1, 1897. Even were we restricted to the more literal meaning of the words used in construing remedial statutes of this kind, the narrow and circumscribed view thus

taken of the statute can hardly be justified if regard be had to the whole of the statute, including the plain purpose of the act as expressed in its title. In the latter, it is clearly stated to be an amendment of previous statutes and the extension and enlargement of their provisions. Again, an analysis of the body of the act bears out the view that, instead of the purpose being to limit or restrict the exercise of any powers, rights, or privileges previously granted, the legislative will was to add to, extend, and enlarge these. The first section contains two general provisions,—one authorizing the amendment and extension of the congressional acts approved, respectively, June 25, 1890, and August 3, 1894, so as to include in their provisions "all outstanding obligations" of the territory; the other directing the funding of all outstanding bonds, warrants, and other evidences of indebtedness of the territory, as well as of the counties, municipalities, and school districts thereof, which had been authorized by legislative enactments, and which bore a higher rate of interest than is authorized by the Funding Law, and which had been sold or exchanged in good faith. The second section likewise has reference to two classes of indebtedness, both of which are recognized obviously so as to confirm, approve, validate, and effectually fix their *status* as binding obligations upon the territory.

The acts of June 25, 1890, and August 3, 1894, being referred to, we must therefore consider the act of June 6, 1896, *in pari materia* with the former. The former act confirmed and approved, with amendments, chapter 1 of title 31 of the Revised Statutes, passed by the territorial legislature March 10, 1887. These amendments had reference to the rate of interest, the time bonds issued for funding purposes should run, and as to what indebtedness might be funded; the act being amended in this particular to include county, municipal, and school indebtedness. Congress added to the legislative enactment a provision that in effect validated a class of obligations otherwise invalid, because incurred in violation of the organic law of the territory, as found in the "Harrison Act," and provided for the funding of all the then existing and outstanding indebtedness, and that which might thereafter be evidenced by warrants issued for the necessary and current expenses of carrying on territorial, county, municipal, and school government for the year ending December 31, 1890,

and added to the foregoing the declaration that thereafter no warrants, certificates, or other evidences of indebtedness should be allowed to issue or be legal when the same is in excess of the limit prescribed by the Harrison Act. The act of August 3, 1894, provided "that an act entitled 'An act approving, with amendments, the funding act of Arizona,' approved June twenty-fifth, eighteen hundred and ninety, and paragraph twenty-two hundred and fifty-two (section fifteen) of said act, be and the same is hereby amended by adding thereto as follows: 'Provided, further, however, that the present outstanding warrants, certificates, and other evidences of indebtedness issued subsequent to December thirty-first, eighteen hundred and ninety, for the necessary and current expenses of carrying on the territorial government only, together with such warrants as may be issued for such purpose for the years ending December thirty-first, eighteen hundred and ninety-four, and December thirty-first, eighteen hundred and ninety-five, may also be funded and bonds issued for the redemption thereof; and thereafter no warrants, certificates, or other evidences of indebtedness shall be allowed to issue, or to be legal where the same is in excess of the limit prescribed by the Harrison Act.' " It is to be noted that, in both the acts referred to, the only limitation imposed had reference to the class of obligations which were permitted to be funded, and did not in any manner restrict the territorial officers in the method of their procedure previously prescribed by the territorial law, or limit the time within which the acts of funding, by the sale and disposition of bonds, might lawfully be done. Bearing in mind the remedial character of this legislation, and reading the act of June 6, 1896, in the light of the previous congressional enactments upon the same subject-matter, we construe the former act to express only what obviously appears to be the congressional intent,—viz., to extend and enlarge the class of obligations which may be funded, and not to limit the time within which the board of loan commissioners might complete the acts of funding indebtedness, which has expressly been recognized by Congress as fundable. We therefore read section 1 of this act as authorizing the funding of all obligations of the territory which existed and were outstanding prior to January 1, 1897, and not as limiting the sale and disposition of bonds for funding purposes by the loan

commissioners to the absurdly short period of six months for the successful accomplishment of the funding of the varied class of obligations validated and recognized by the act as fundable, and which necessarily amounted to large sums. It is not to be assumed that Congress would in one breath grant liberal and generous concessions, and in the next breath take away their practical benefits by the imposition of a seemingly unreasonable and unnecessary restriction, and thus defeat its own purpose and intent. It is to be noted that no contention is made that any of the indebtedness proposed to be funded by the sale and disposition of the bonds in question has been incurred since January 1, 1897, but the sole contention is as to the time within which the funding of the territorial indebtedness as limited by law may be done.

The objection to the sale and disposition, by the present officers, of the bonds signed by the former loan commissioners, and countersigned by the former territorial treasurer, is not supported by a reading of the various provisions of the Funding Act, or by authority. Section 2 of the Funding Act provides that the loan commissioners "shall from time to time issue negotiable coupon bonds of this territory." Section 4 provides that the bonds "shall bear the date of their issue, . . . and shall be signed by said loan commissioners, . . . and countersigned by the territorial treasurer." Section 6 directs that said commissioners shall from time to time after signing said bonds deliver them to the territorial treasurer, taking his receipt therefor, and charge him therewith. It is seen by the foregoing that the bonds must bear the date of their issue. It is important to inquire what is meant by the term "issue," as used in the statute. We adopt the definition of the supreme court of Washington in the case of *Yesler* v. *City of Seattle,* 1 Wash. 308, 25 Pac. 1014, upon a like question: " 'Date of issue,' when applied to notes, bonds, etc., of a series, usually means the arbitrary date fixed as the beginning of the term for which they run, without reference to the precise time when convenience or the state of the market may permit of their sale or delivery." That this is the meaning intended is made clear by a provision in section 4, to the effect that bonds shall bear interest from the date of issue, but in no case shall interest be paid thereon for any time before their delivery to the purchaser. Section 7 prohibits the treasurer from selling the

bonds for less than their face value and the accrued interest at the time of disposal. The statute thus clearly recognizes that the execution of the bonds may precede their sale and delivery by a sufficient period of time to make it an object to require the sale to be for a sufficient amount to cover the par value of the bonds and the accrued interest thereon. To make these bonds the obligations of the territory under the statute, so far as the ministerial duties of the officers clothed with authority of their issuance and disposition go, it is essential that they be signed by the loan commissioners, countersigned by the territorial treasurer, and then by the former delivered to the latter; and, finally, they must be sold and delivered by the latter, or exchanged as provided by law. When the loan commissioners execute and deliver the bonds to the territorial treasurer, their ministerial duty is at an end. The board of loan commissioners is by law made a continuous body. By what reasoning or authority can a change in the personnel of the board, occurring after the execution of these bonds and their delivery to the treasurer, be held to affect the validity of these completed acts? We know of none. To hold otherwise means that a new issue of bonds must be made whenever, by death, resignation, removal, or otherwise, a change in any of the offices of governor, secretary, auditor, or treasurer occurs between the execution of any bonds and their delivery to a purchaser. Our attention has been called to the cases of *Weyauwega* v. *Ayling,* 99 U. S. 112; *Coler* v. *Cleburne,* 131 U. S. 162, 9 Sup. Ct. 720; and *Anthony* v. *Jasper County,* 101 U. S. 693, in support of the doctrine contended for. An examination of these cases will show that they are not in point. In *Weyauwega* v. *Ayling,* bonds bearing date June 1st, and purporting to be signed by the chairman of the board of supervisors and by the town clerk, were shown to have been signed by the person signing as clerk July 13th, at which date he had ceased to be clerk. The supreme court held these bonds good upon the presumption that they had been delivered with the assent of the clerk then in office. In *Coler* v. *Cleburne,* bonds were signed by the mayor of the city in office at their date, after he had been succeeded in office by another. The court held that the mayor in office at the time of their signing could alone lawfully sign the same. In *Anthony* v. *Jasper County,* the facts were that bonds required by law to be signed by the

presiding judge of the county court were in fact signed by one who had been succeeded in that office by another at the date of signing, and the bonds dated back to a time when he held office. If this latter case is an authority at all upon the question here presented, it is against the contention of appellant, inasmuch as the intimation of the court is strong that had the bonds been actually delivered by the proper officers, which was shown not to have been the case, they would have been valid, at least in the hands of innocent holders. No authority has been called to our attention, nor have we after diligent search found any, which holds that bonds signed by the proper officers at their date cannot be negotiated and sold by their successors in office, when there existed authority in the former to issue bonds at the time of the signing, and when the authority was continued to the time of delivery, which is the case of the bonds in question.

Upon the third point raised, we have carefully examined the form of the bonds proposed to be disposed of by the territorial treasurer, and find that it conforms in all particulars with that prescribed by the various acts of Congress relating thereto. We therefore hold that, under existing law, the loan commissioners and the territorial treasurer have power and authority to sell and dispose of bonds to fund outstanding obligations of the territory which accrued prior to January 1, 1897, and that no new issue of bonds is needed for that purpose; those now in the hands of the territorial treasurer, and signed by the former territorial officers, being in all respects as to form and execution as provided by law. The judgment of the court below sustaining the demurrer to the complaint, and dismissing the action, is affirmed.

Davis, J., and Doan, J., concur.