[Civil No. 614.    Filed April 16, 1898.]

[52 Pac. 1127.]

COUNTY OF COCONINO, Plaintiff and Appellant, v. COUNTY OF YAVAPAI, Defendant and Appellee.

1. COUNTIES—DIVISION OF—INDEBTEDNESS—ACT OF FEBRUARY 19, 1891, AND ACT OF MARCH 12, 1885, CITED—BONDS—IN AID OF PRESCOTT AND ARIZONA RAILWAY COMPANY, ISSUED BY YAVAPAI COUNTY, VALID BY ACT OF CONGRESS APPROVED JUNE 6, 1896.—The act of February 19, 1891, *supra*, created the county of Coconino out of the county of Yavapai, and provided that one third of the indebtedness of the latter should be assumed and paid by the former by means of bonds, which the county of Yavapai was authorized to accept and dispose of for its own benefit. A portion of the indebtedness assumed by the county of Coconino, and for which bonds were issued, was on account of bonds issued by Yavapai County in aid of the Prescott and Arizona Railway Company, under act of March 12, 1885, *supra*. In an action brought by Coconino County to recover the amount paid on account of such railway aid bonds, a demurrer to the complaint was properly sustained, said railway aid bonds having been validated by the act of Congress approved June 6, 1896, *supra*.

2. SAME—SAME—SAME—PLEADING—SUFFICIENCY OF COMPLAINT.—In an action by the county of Coconino against the county of Yavapai to recover a portion of indebtedness assumed under the County Division Act, represented by railway aid bonds alleged to be void, a demurrer to the complaint is properly sustained, it alleging that many of the bonds, covering the amount sought to be recovered, executed and delivered by Coconino County to Yavapai County, had been sold and delivered to sundry persons, and the remainder funded under the Territorial Funding Act before the suit was brought, and failing to show that said railway aid bonds were not still an outstanding and a subsisting indebtedness against Yavapai County. Said Coconino County being a portion of Yavapai County at the time the bonds were issued, must be held to bear its portion of the burden.

AFFIRMED.    176 U. S. 681; 44 L. Ed. 637; 20 Sup. Ct. 1025.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Yavapai. R. E. Sloan, Judge. Affirmed.

The facts are stated in the opinion.

E. S. Clark, District Attorney, and Edward M. Doe, for Appellant.

H. D. Ross, District Attorney, and P. W. O'Sullivan, Assistant District Attorney, for Appellee.

STREET, C. J.—The thirteenth legislative assembly of Arizona on the twelfth day of March, 1885, passed an act to aid in the construction of a railroad in Yavapai County, which authorized the issuance of bonds on the faith and credit of Yavapai County to the amount of four thousand dollars per mile for the construction of a railroad from a point near Chino Station, on the Atlantic and Pacific Railroad, to Prescott and to the northern boundary of Maricopa County. Soon thereafter was constructed the Prescott and Arizona Central Railroad from a point near Chino Station, called Seligman, to the city of Prescott, all in Yavapai County, Arizona; and the bonds of Yavapai County were issued to the company constructing said railroad to the number of two hundred and ninety-two, and in the denomination of one thousand dollars each. At that time the territory now embraced in Coconino County was a part of Yavapai County. The sixteenth legislative assembly of Arizona on the 19th of February, 1891, created the county of Coconino out of certain territory then belonging to Yavapai County. By the act creating the county of Coconino it was provided that one third of the indebtedness of Yavapai County, less twenty-five thousand dollars (the same being one third of the estimated valuation of the public improvements in said county of Yavapai at the time of the passage of the act), shall be assumed and paid by the county of Coconino to the county of Yavapai; and that the county of Coconino should issue to the county of Yavapai negotiable coupon bonds covering all indebtedness, bearing interest at the rate of seven per cent per annum, and that said bonds should be delivered to the treasurer of Yavapai County; and Yavapai County was authorized to take, own, and hold the said bonds, and through its board of supervisors dispose of and transfer the same to the benefit of said Yavapai County. In compliance with said act the boards of supervisors of the respective counties met at the city of Prescott, and ascertained the amount of indebtedness of Yavapai County as it existed on the nineteenth day of February, 1891, the date of the passage of said act, to be the sum of $533,926.50, and the proportion of said indebtedness belonging

to Coconino County to be the sum of $152,975.50. Thereafter, on the second day of June, 1891, the said board of supervisors of Coconino County made, executed, and delivered to Yavapai County one hundred and fifty-three negotiable bonds dated May 1, 1891, bearing interest at the rate of seven per cent per annum, interest payable annually on the second day of January of each year. Each of said bonds except the last one, numbered 153, was for the principal sum of one thousand dollars, and said bond numbered 153 was for the principal sum of $975.50. It is alleged by plaintiff that on the nineteenth day of February, 1891, the sum of $294,779.84, which was included in the total amount of indebtedness of Yavapai County, was for and on account of the bonds which had been issued and delivered to the Prescott and Arizona Central Railroad Company under and by virtue of the act of the thirteenth legislative assembly aforesaid, that the said act of the thirteenth legislative assembly was void, and that the sum of $98,259.32 is the proportion which Coconino County assumed to pay to Yavapai County of said void bonds. This action was brought by Coconino County to recover the said sum of $98,259.32, together with interest thereon, which Coconino County had paid to Yavapai County, from the date of said bonds to the 15th of January, 1895. To this complaint the defendant, Yavapai County, filed a demurrer, which the district court of Yavapai County sustained, and rendered judgment thereon in favor of the defendant, from which judgment the plaintiff appeals to this court.

The questions raised by the plaintiff in his brief are: First, whether the bonds given by Yavapai County in aid of the Arizona Central Railroad Company were void when issued; second, whether, if then void, the act of Congress entitled "An act amending and extending the provisions of Congress entitled 'An act approving with amendments the Funding Act of Arizona, approved June 25th, 1890, and the act amendatory and supplemental thereof, approved August 3d, 1894,'" approved June 6, 1896, is applicable to said bonds. Whether or not the act of March 12, 1885, of the thirteenth legislative assembly authorizing Yavapai County to issue bonds for the construction of said railroad was within the power of the legislature to enact, or whether the bonds that were issued in pursuance of said act were originally valid or

not, this court does not feel called upon to decide, for the view we take of the matter is, that the validity of the bonds is to be determined by the act of Congress approved June 6, 1896, section 2 of which is as follows: "That all bonds and other evidences of indebtedness heretofore funded by the loan commission of Arizona, under the provisions of the act of Congress approved June 25th, 1890, and the act amendatory thereof and supplemental thereto approved August 3d, 1894, are hereby declared to be valid and legal for the purposes for which they were issued and funded; and all bonds and other evidences of indebtedness heretofore issued under the authority of the legislature of said territory as hereinbefore authorized to be funded are hereby confirmed, approved, and validated; and may be funded as in this act provided until January first, 1897, provided that nothing in this act shall be so construed as to make the government of the United States liable or responsible for the payment of any of said bonds, warrants, or other evidences of indebtedness by this act approved, confirmed, and made valid and authorized to be funded." Under that act all bonds which had been issued by virtue of the territorial legislative enactments were permitted to be funded in territorial funding bonds. The act of Congress aforesaid made valid all of the bonds which were issued under the legislative act of March 12, 1885. That the act of Congress was intended to meet the question of bonds issued under the legislative act of March 12, 1885, is made more certain, and the construction of the language of it becomes more easy of interpretation, under the history which surrounds its passage. The territorial legislative assembly of 1895 passed a memorial asking Congress for an enactment of some such law, the text of which memorial is as follows: "Whereas, under the various acts of the legislative assembly of the territory of Arizona, certain of the counties of the territory were authorized to issue in aid of railroads and other quasi-public improvements, and did under such acts issue, bonds, which said bonds were sold in open market, in most instances at their face value, and are now held at home and abroad by persons who in good faith invested their money in the same, and, save and except such knowledge as the law imputes to the holder of bonds issued under authorized acts, are innocent holders of the same; and whereas, the validity of

these bonds for many years after their issuance was unquestioned, and acknowledged by the payment of the interest thereon as it fell due; and whereas, there has recently been raised a question as to whether these acts of the legislative assembly were valid under the organic law of the territory, which had led to a movement looking to the repudiation of the indebtedness created under and by virtue of such acts; and whereas, we believe that such repudiation would under the circumstances work great wrong and hardship to the holders of such bonds, and at the same time most seriously affect the credit and standing of our people for honesty and fair dealing and bring us into disrepute; wherefore we most strongly urge upon your most honorable bodies the propriety and justice of passing such curative and remedial legislation as will protect the holders of all bonds issued under the authority of acts of the legislative assembly, the validity of which has heretofore been acknowledged, and that you further legislate as to protect all innocent parties having entered into contracts resulting from inducements offered by our territorial legislation, and relieve the people of the territory from the disastrous effects that must necessarily follow any repudiation of good faith on the part of the territory, and that you may so further legislate as to validate all acts of the legislative assembly of the territory which have held out inducements for the investment of capital within the territory, and which have led to the investment of large sums of money in enterprises directly contributing to the development and growth of the territory, and thus relieve the honest people of the territory from the disastrous effects that must necessarily follow any violation of good faith on the part of our people: *Resolved,* That our delegate to Congress be, and he is hereby, instructed to use all honorable means to bring this subject to the earnest consideration of Congress; that the secretary of the territory be, and he is hereby, requested to transmit a copy of the foregoing memorial to each house of Congress, and to our delegate in Congress.''

Another reason why the demurrer was properly sustained is, that the plaintiff alleges that many of the said one hundred and fifty-three bonds, covering the amount of $98,259.32, executed and delivered by Coconino County to Yavapai County, have been sold and delivered to divers and sundry persons, and

the remainder exchanged for territorial funding bonds, under the territorial Funding Act and the act of Congress providing for the funding of territorial and county indebtedness; and it was shown by the complaint that the same had been done before this action was brought, and failed to show any other condition than that the obligation of Yavapai County on the bonds issued by it to the Prescott and Arizona Central Railroad Company was outstanding and remained as a Yavapai County liability and indebtedness. For aught this court knows, there may be already a judgment against Yavapai County, making it compulsory upon that county to pay these railroad bonds. Until Yavapai County is relieved of its obligation to pay the bonds issued by it for the construction of the railroad, Coconino County, which was a portion of Yavapai County at the time the bonds were issued, must be held to bear its portion of the burden. The judgment of the district court is affirmed.

Davis, J., and Doan, J., concur.

Sloan, J., having been judge in the court below, did not sit in this case in supreme court.