[Civil No. 694.  Filed November 1, 1899.]

[59 Pac. 99.]

YAVAPAI COUNTY, Plaintiff and Appellant, v. M. H. McCORD et al., Defendants and Appellees.

1. BONDS—COUNTY—INVALIDITY—CURED BY VALIDATING ACT OF CONGRESS—ACT OF CONGRESS, JUNE 6, 1896, AND TERRITORIAL ACT, MARCH 12, 1885, CITED—COCONINO COUNTY V. YAVAPAI COUNTY, 5 ARIZ. 385, 52 PAC. 1127, FOLLOWED.—Congress having validated railroad-aid bonds theretofore issued by counties in Arizona, no original invalidity of bonds issued by a county under the Territorial Act, *supra,* nor of the act under which they were so issued, can be relied upon to prevent their being refunded.

2. SAME—SAME—REFUNDING—DEMAND—SUFFICIENT IF MADE BY HOLDER —LAWS OF ARIZONA, 1891, ACT NO. 79, SEC. 7, CONSTRUED—BRAVIN V. MAYOR, ANTE, P. 212, 56 PAC. 719, FOLLOWED.—As the act, *supra,* provides that "any person holding bonds, warrants or other evidence of indebtedness of the territory or any county, municipality or school district within the territory . . . may exchange the same for the bonds issued under the provisions of this act," it is the duty of the commissioners to fund the outstanding indebtedness of a county upon a demand from the holders of the evidence thereof, although no such demand is made by the county.

3. SAME—SAME—SAME—LOAN COMMISSIONERS—POWERS OF—ACT OF CONGRESS, JUNE 6, 1896, CONSTRUED—GAGE V. McCORD, 5 ARIZ. 227, 51 PAC. 977, FOLLOWED.—The limit of January 1, 1897, mentioned in the act of Congress of June 6, 1896, authorizing the funding of all obligations outstanding, was intended to be restrictive only of the indebtedness which could be funded, and made the act applicable to such obligations as existed and were outstanding prior to that time, but did not terminate on that date the authority of the territorial officers to fund said obligations.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Webster Street, Judge.  Affirmed.

The facts are stated in the opinion.

Herndon & Norris, for Appellant.

C. F. Ainsworth, Attorney-General, and T. W. Johnston, and L. H. Chalmers, for Appellees.

DAVIS, J.—By the provisions of an act of the legislative assembly of the territory of Arizona entitled ''An act to aid in the construction of a railroad in Yavapai County,'' approved March 12, 1885, there was authorized to be issued, on the faith and credit of Yavapai County, negotiable bonds in the amount of four thousand dollars per mile for the construction of a railroad from a point on the line of the Atlantic and Pacific Railroad, near Chino Station, in Yavapai County, to the city of Prescott, and thence to the northern boundary of Maricopa County. The Prescott and Arizona Central Railroad Company, accepting the provisions of this act, constructed a railroad, in accordance therewith, from a junction point near Chino Station to the city of Prescott, and received therefor the negotiable bonds of Yavapai County to the number of two hundred and ninety-two, and in the denomination of one thousand dollars each. Interest was paid on these bonds from the date of their issue, in 1886, to the year 1893, inclusive, and twenty-seven of said bonds were redeemed and paid by Yavapai County. On the seventeenth day of September, 1897, the territorial loan commissioners took up two hundred and three of said bonds in exchange for territorial funding bonds, and, so far as the record shows, the remainder of said original issue is still outstanding. On October 1, 1897, Yavapai County commenced an action in the court below to enjoin the defendants, who were, respectively, governor, secretary, and auditor of the territory, acting as loan commissioners, from funding or exchanging any of the aforesaid outstanding railroad bonds. The injunction was asked for upon three grounds, as stated in the amended complaint: First, that the act of the territorial legislature under which said bonds were issued was in conflict with the statutes of the United States, and that the said bonds are, for that reason, illegal and void; second, that no official demand had been made upon the loan commissioners by the authorities of Yavapai County for the funding of said bonds; third, that, under the act of Congress approved June 6, 1896 (29 Stats. 262), the power and authority of the loan commissioners to fund said bonds terminated on January 1, 1897. Upon the full hearing of the case, the lower court rendered judgment denying the injunction and dismissing the complaint, from which judgment the plaintiff has appealed to this court.

Inasmuch as the appellant rested his claim to equitable relief solely upon the grounds above stated, it follows that the relief sought was properly denied, unless the right thereto could be sustained upon some one or more of those grounds. Whether or not there is merit in any one of them is to be determined, in our judgment, by the correct interpretation of the several congressional and territorial funding acts. These acts have been recently reviewed and construed by this court in the cases of *Gage* v. *McCord,* 5 Ariz. 227, 51 Pac. 997; *Coconino County* v. *Yavapai County,* 5 Ariz. 385, 52 Pac. 1127, and *Bravin* v. *Mayor, etc., ante,* p. 212, 56 Pac. 719, and all of the questions necessarily involved in the case at bar have been fully decided. In *Coconino County* v. *Yavapai County, supra,* the court, referring to these same bonds, said: "Whether or not the act of March 12, 1885, authorizing Yavapai County to issue bonds for the construction of said railroad, was within the power of the legislature to enact, or whether the bonds that were issued in pursuance of said act were originally valid or not, this court does not feel called upon to decide; for the view we take of the matter is that the validity of the bonds is to be determined by the act of Congress approved June 6, 1896, section 2 of which is as follows: 'That all bonds and other evidences of indebtedness heretofore funded by the loan commissioners of Arizona, under the provisions of the act of Congress approved June 25, 1890, and the act amendatory thereof and supplemental thereto approved August 3, 1894, are hereby declared to be valid and legal for the purposes for which they were issued and funded; and all bonds and other evidences of indebtedness heretofore issued under the authority of the legislature of said territory, as hereinbefore authorized to be funded, are hereby confirmed, approved and validated, and may be funded as in this act provided until January 1, 1897; provided, that nothing in this act shall be so construed as to make the government of the United States liable or responsible for the payment of any of said bonds, warrants, or other evidences of indebtedness by this act approved, confirmed and made valid, and authorized to be funded.' Under that act, all bonds which had been issued by virtue of the territorial legislative enactments were permitted to be funded in territorial funding bonds. The act of Congress aforesaid made valid all of the bonds which

were issued under the legislative act of March 12, 1885." In
support of this construction, and as bearing upon the inten-
tion of Congress and the exigencies which the act of June 6,
1896, was designed to meet, the court, in that case, cited the
memorial adopted by the territorial legislative assembly, in
1895, setting forth that, under various acts of the assembly,
the counties were authorized to and did issue railroad-aid
bonds, which were sold in the open market at their face value,
and were then held at home and abroad by *bona fide* purchas-
ers; that the validity of these bonds, though questioned, was
acknowledged by the payment of interest thereon; that a
repudiation of the same would work a great hardship to the
holders and affect the credit of the territory; and therefore
the legislative assembly urged upon Congress the propriety
of passing such curative legislation as would protect the
holders of all bonds issued under authority of its acts the
validity of which had been acknowledged, and relieve the
people from the disastrous effects of repudiation. Since the
case of *Coconino County* v. *Yavapai County* was decided by
this court the important features of this funding legislation
have received interpretation from the highest judicial au-
thority of the land. In *Utter* v. *Franklin,* 172 U. S. 416, 19
Sup. Ct. 183, which went from this court on appeal, Mr.
Justice Brown, delivering the opinion, expressed the fol-
lowing views upon the effect to be given the congressional
enactment of June 6, 1896: "Its evident purpose was to
authorize the funding of all outstanding bonds of the terri-
tory and its municipalities, which had been authorized by
legislative enactments, whether lawful or not, provided such
bonds had been 'sold or exchanged in good faith, in com-
pliance with the terms of the act of the legislature by which
they were authorized.' The second section deals with the
original bonds which had not been theretofore funded, and
provides that all such as had been theretofore issued under
the authority of the legislature, and which by the first section
were authorized to be funded, should be confirmed, approved,
and validated, and might be funded until January 1, 1897.
We think it was within the power of Congress to validate
these bonds. Their only defect was that they had been issued
in excess of the powers conferred upon the territorial munici-
palities by the act of June 8, 1878. There was nothing at

that time to have prevented Congress from authorizing such municipalities to issue bonds in aid of railways, and that which Congress could have originally authorized it might subsequently confirm and ratify. . . . Construing this [act] in the light of the surrounding circumstances, and particularly in view of the memorial, it is entirely clear that it was intended to apply to bonds issued under authority of the legislature, and purporting on their face to be legal obligations of the county, whether in fact legal or not; and, to put the matter still further beyond question, they are expressly declared to be legal and valid." The bonds issued by Yavapai County under the act of March 12, 1885, having thus been since approved and validated by Congress, no original invalidity of the bonds, or of the legislative enactment under which they were issued, could be of any avail to the appellant in this case.

The point involved in the second ground upon which the appellant based his right to an injunction,—namely, that no official demand had been made upon the loan commissioners by the authorities of Yavapai County for the funding of these bonds,—was passed upon in *Bravin* v. *Mayor, etc., supra,* in which the court said: "The act of June 25, 1890 (being the act of Congress approving, with amendments, the funding act of Arizona), was utterly silent as to the right of the holder of any warrants or other outstanding indebtedness to compel either the municipal authorities or the loan commissioners to take any steps required for the funding of such indebtedness. It was doubtless for this reason that the Territorial Act of March 19, 1891, provided that 'any person holding bonds, warrants or other evidence of indebtedness of the territory, or any county, municipality or school district within the territory, . . . may exchange the same for the bonds issued under the provisions of this act,' etc. As the law stood, therefore, after March 19, 1891, it was the duty of the loan commissioners to fund the outstanding indebtedness of municipalities—First, upon the official demand of municipal authorities; second, upon the application of the holders of such outstanding bonds, warrants, and other evidences of indebtedness as had not been funded." A demand from the holders alone upon the loan commissioners for the funding of these Yavapai County railroad bonds would have been sufficient,

in itself, to have entitled the holders to an exchange of such bonds for territorial funding bonds, and this seems to have been the view taken of these provisions of the law by the supreme court of the United States in *Utter* v. *Franklin.*

3. The question as to whether or not the act of June 6, 1896, placed a limitation upon the time in which the loan commissioners could exercise their funding powers, was fully considered in the case of *Gage* v. *McCord, supra,* and in that case we held that the limit of January 1, 1897, mentioned in the act was intended to be restrictive only of the indebtedness which could be funded, and made the act applicable to such obligations as existed and were outstanding prior to that time, but that it did not terminate on that date the authority of the territorial officers to fund said obligations. We do not understand that this construction is inconsistent with any views expressed by the supreme court of the United States in the case of *Utter* v. *Franklin.* Upon none of the grounds stated in his amended complaint could the appellant have been entitled to the relief prayed for, and the injunction was properly refused. The judgment of the district court is affirmed.

Sloan, J., and Doan, J., concur.