[Civil No. 709.   Filed March 28, 1900.]

[60 Pac. 895.]

## GEORGE SCHUERMAN et al., Defendants and Appellants, v. TERRITORY OF ARIZONA, Plaintiff and Appellee.

1. BONDS—COUNTY—FUNDING—TERRITORIAL ACT, MARCH 19, 1891, CONSTRUED—BRAVIN V. MAYOR, 6 ARIZ. 212, 56 PAC. 719, AND YAVAPAI COUNTY V. MCCORD, 6 ARIZ. 423, 59 PAC. 99, FOLLOWED.—Under the territorial act of March 19, 1891, providing that "any person holding bonds, warrants, or other evidence of indebtedness of the territory or any county, municipality, or school district within the territory . . . may exchange the same for the bonds issued under the provisions of this act," it was the duty of the commissioners to fund the outstanding indebtedness of the county upon a demand from the holders, although no such demand was made by the county board of supervisors.

2. SAME—SAME—SAME—LOAN COMMISSIONERS — POWERS OF — ACT OF CONGRESS, JUNE 6, 1896, CONSTRUED—GAGE V. MCCORD, 5 ARIZ. 227, YAVAPAI COUNTY V. MCCORD, 6 ARIZ. 423, 59 PAC. 99, FOLLOWED.— The limit of January 1, 1897, mentioned in the act of Congress of June 6, 1896, authorizing the funding of all obligations outstanding, was intended to be restrictive only of the indebtedness which could be funded, and made the act applicable to that time, but did not terminate on that date the authority of the territorial officers to fund said obligations.

3. SAME—SAME—SAME—SAME—JOINT AUTHORITY—AUTHORITY OF MAJORITY—PAR. 2932, SUBD. 2, AND TITLE 31, REV. STATS. ARIZ. 1887, AS AMENDED BY ACT OF CONGRESS, JUNE 25, 1890, CONSTRUED.— Under subdivision 2 of paragraph 2932, *supra,* providing that "All words purporting to give a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or persons, unless it shall be otherwise expressly declared in the law giving the authority," the funding of bonds by the board of loan commissioners at a meeting of such

board at which only two members of such board were present, the
third being out of the territory, was valid, the Funding Act of 1887,
as amended by Congress in 1890, being a territorial act and directly
affected by subdivision 2 of paragraph 2932, *supra.*

AFFIRMED.    184 U. S. 342; 46 L. Ed. 580.

APPEAL from a judgment of the District Court of the
Fourth Judicial District in and for the County of Yavapai.
R. E. Sloan, Judge. Affirmed.

The facts are stated in the opinion.

Reese M. Ling, District Attorney, for Appellants.

The board of loan commissioners was created by the act of
Congress of June 25, 1890, by the use of the following lan-
guage: "For the purpose of liquidating and providing for
the payment of the existing and outstanding indebtedness of
the territory of Arizona and such future indebtedness as may
be or is now authorized by law, the governor of said territory,
together with the territorial auditor and territorial treasurer,
and their successors in office, shall constitute a board of com-
missioners, to be styled the loan commissioners of the terri-
tory of Arizona, and shall exercise powers and perform the
duties hereinafter provided."

A board of this character could not act through a majority
of its members in the absence of the other member, and any
act performed at such a meeting is void.

The rule, as stated by Chancellor Kent, is, "that in matters
of public trust or powers conferred for public purposes, if
*all meet,* the acts of a majority will bind."

In *People* v. *Coghill,* 47 Cal. 361, the court, in passing upon
the acts of two out of three commissioners under a statute
providing for the appointment of three, held: "Where the
act itself did not provide that a majority of the board shall
constitute a quorum, the acts of two of the board were clearly
illegal, even though the third had written that he did approve
the action of the majority."

In the case of *First National Bank of North Bennington*
v. *Mt. Tabor,* 52 Vt. 87, 36 Am. Dec. 735, the court cites with
approval the case in 47 Cal. 361, above mentioned, and states
the rule as follows: "The general rule in matters of public
interest, the majority of those upon whom the power is con-

ferred is recognized, provided when all meet and confer, but
not when the minority is ignorant of the transaction and has
no legitimate opportunity to exercise its influence in the de-
liberations; or when the act in its terms requires the presence
and concurrence of all.''

Sutherland on Statutory Construction says: ''Where any
number of persons are appointed to act in a public manner
they must all confer, but a majority may decide.''

The same rule is laid down in the following cases: *Crocker
v. Crane,* 21 Wend. 218, 34 Am. Dec. 228; *Babcock* v. *Lamb,*
1 Cow. 238; *Ex parte Rogers,* 7 Cow. 526; *McCoy* v. *Curtice,*
9 Wend. 17, 24 Am. Dec. 113, and note; *Green* v. *Miller,* 6
Johns. 41, 10 Am. Dec. 312.

C. F. Ainsworth, Attorney-General, for Appellee.

By direct statutory enactment in Arizona, where a board of
officers consists of three or more the majority of the board
may meet and act; therefore the funding of these bonds was
legal. Rev. Stats., sec. 2932, subd. 2.

The act of funding the bonds was a mere ministerial act.
When a *ministerial* power is conferred on a public board, only
a majority of the board need meet and act. *Utter* v. *Franklin,*
172 U. S. 417, 19 Sup. Ct. 183.

In cases where it is held that all the members of a public
board must meet and then a majority may act, it is held suffi-
cient if all the members are notified of the meeting, even
though they do not attend; and where there is nothing of
record to show that all were not notified it will be presumed
that all were notified. *People* v. *Walker,* 23 Barb. 312; *Wil-
liam* v. *School Dist. No. 1,* 21 Pick. 75, 32 Am. Dec. 243;
*Horton* v. *Garrison,* 23 Barb. 176; *McCoy* v. *Curtice,* 9 Wend.
17, 24 Am. Dec. 113, and note; *Yates* v. *Russell,* 17 Johns. 468.

STREET, C. J.—The appellants constitute the board of
supervisors of Yavapai County. The territory, by Charles
F. Ainsworth, its attorney-general, on the second day of Sep-
tember, 1899, obtained from the district court an alternative
writ of *mandamus* against the defendants, members of said
board, requiring them to levy and assess upon the taxable
property of the county of Yavapai the sum of thirty-two cents
on each one hundred dollars valuation for the years 1898 and

1899, and the sum of thirty-seven cents on each one hundred dollars of valuation for the year 1900, for the purpose of paying interest on two hundred and fifty-eight territorial funding bonds, of the denomination of one thousand dollars each, issued by the territorial loan commission on the seventeenth day of September, 1897. Upon the return of the writ and the filing of defendant's answer, a statement of facts was submitted, which statement of facts the court adopted as its findings; and, as a result arising from the conclusions of law and the findings of fact, judgment was rendered for the plaintiff, and defendants were required to make such levy for the years 1898, 1899, and 1900. The defendants appeal, and present to this court three questions for consideration: "First. Were said bonds legally funded, without any demand from the board of supervisors of Yavapai County upon the territorial loan commission for such funding? Second. Could said bonds be legally funded after January 1, 1897? Third. Were said bonds legally funded at a meeting of said board of loan commissioners of the territory of Arizona, at a meeting at which only two members of said board were present; the third member being absent from the territory, and not in any manner consulted with reference to such funding?"

The history of these bonds is fully set out in former decisions of this court, to wit: *Gage* v. *McCord,* 5 Ariz. 227, 51 Pac. 977; *Coconino County* v. *Yavapai County,* 5 Ariz. 385, 52 Pac. 1127; *Yavapai County* v. *McCord,* 6 Ariz. 423, 59 Pac. 99. The first and second questions presented for our view in this case were therein discussed and settled, as also in the case of *Bravin* v. *City of Tombstone,* another territorial funding bond case, reported in 6 Ariz. 212, 56 Pac. 719. The district attorney for Yavapai County gracefully admitted the binding force of these decisions, but invited the court's attention again to the questions, because of the grave results embodied in their solution. The discussion of those questions in his brief is full and explicit, but a study of it does not enable this court to change its views upon the questions referred to. In those cases this court held that the bonds were valid; that they were regularly issued; that a demand from the holders of the bonds was sufficient, without a demand from the municipal authorities. We also held that the limit of January 1, 1897, mentioned in the act permitting the refunding of bonds, was

intended to be restrictive only of the indebtedness which could be funded, and made the act applicable to such obligations as existed and were outstanding prior to that time, but that it did not terminate on that day the authority of the territorial officers to fund said obligations.

The third question: "Were said bonds legally funded at a meeting of said board of loan commissioners of the territory of Arizona, at a meeting at which only two members of said board were present; the third member being absent from the territory, and not in any manner consulted with reference to such funding?" is answered by our statute (par. 2932, subd. 2): "All words purporting to give a joint authority to three or more public officers or other persons, shall be construed as giving such authority to a majority of such officers or other persons, unless it shall be otherwise expressly declared in the law giving the authority." The case cited by appellants (*People* v. *Coghill,* 47 Cal. 361), in which it was held that two members of the board of commissioners were not legally empowered to act in the absence of the third, is not in point; for it was the provision of that act that "the board of supervisors to whom the report shall be made, shall appoint three commissioners, who shall jointly view and assess upon each and every acre to be reclaimed or benefited thereby," etc. There is no provision in the Funding Act of 1887, as amended by Congress in 1890, that the commissioners should jointly act, but the board was treated as a unit. The Funding Act is not strictly a Congressional act. It is a territorial act passed by the legislature of the territory, and embodied in the Revised Statutes of 1887. For the purpose of assuring the validity of the act, and of placing any issuance of bonds under it beyond dispute, the act was presented to Congress for its affirmative approval, which it gave with some few amendments, generally verbal in their nature, and evidently for the purpose of making the act more specific. The title of the act passed by Congress clearly carries out that view, for the first provision of that act is "that the act of the Revised Statutes of Arizona of 1887, known as title XXXI, 'Funding,' be and is hereby amended so as to read as follows; and that as amended the same is hereby approved and confirmed, subject to future territorial legislation." The act being a territorial act, and the commission being the creation of the territory, it is directly

affected by paragraph 2932, *supra.* The judgment of the district court is affirmed.

Davis, J., and Doan, J., concur.