MARY A. POPLIN ET ALS. v. MARY HATLEY ET ALS.

(Filed 24 November, 1915.)

1. **Wills—Probate—Caveat—Statutes—Clerks of Court—Pleas and Quarter Sessions—Will Appearing of Record—Presumptions—Burden of Proof.**

   The requirements of Revisal, sec. 3126, that the clerk of the Superior Court take in writing the proofs and examinations as to the execution of a will and to embody the substance thereof in his certificate of probate, and that the certificate thereof be recorded with the will, did not obtain in the probate of a will in the old practice before the court of pleas and quarter sessions; and where the records show that a will sought to be set aside for improper probate, valid on its face, has been transcribed upon the records of that court, it is presumed to have been duly admitted to probate and properly transcribed upon the record, the burden being upon the caveator to show to the contrary.

2. **Same—Evidence—Rebuttal.**

   Where a will valid upon its face is attacked for insufficiency of probate before the old court of pleas and quarter sessions, and it appears that therein an estate for life was granted to the testator's wife with remainder to two of testator's children, with a small bequest in money to the caveator; that the caveator was shown the will, received and receipted for the money devised, and the life tenant held possession of the land for her life, and since then the remaindermen have been in possession, without objection from the caveator; that the clerk of the court has not made sufficient search to find other entries bearing upon the validity of the will: *Held*, the evidence confirms the presumption in favor of the validity of the probate, instead of tending to rebut it.

3. **Wills—Caveator Accepting Benefits—Estoppel.**

   Where the caveator has been shown the will devising the testator's lands to another, and to her a bequest in money, and accepts the money and receipts therefor, after full knowledge of all the facts, she will not be heard to impeach the validity of the will.

APPEAL by plaintiff from *Carter, J.,* at the July Term, 1915, of STANLY.

Proceeding for the partition of land, the petitioners claiming to be the owners of two-thirds thereof and that the defendants together are the owners of the other one-third. The defendants deny that the petitioners own any interest in the land and contend that they own the same in fee.

Both the petitioners and the defendants claim under Alfred Hatley, who died during the War Between the States, seized in fee of the land in controversy, and leaving surviving him his widow, Margaret Hatley, and two daughters, Mary L. Hatley, now Poplin, one of the petitioners, and Frances Hatley, who has died leaving as her only heir at law R. A. Hatley, the other petitioner, and one son, William I. L. Hatley, who has died leaving surviving him a widow, Mary Hatley, and several children as his heirs at law, who, with his widow, are the defendants in this proceeding.

On the trial the defendants offered in evidence the Record of Wills, Book No. 1, p. 265, on which appears the following paper-writing:

In the name of God, Amen: I, Alfred Hatley, do make my last will and testament as follows: I give my entire estate to my wife, Margaret, during her lifetime and after the death of my wife I desire my son William I. L. to have my land and the two girls to have $50 each, to be paid to them; if not a sufficiency after the payment of my debts, I will that the said sum shall be paid out of my land by my son, William, and I appoint my wife executrix.

In testimony whereof I hereunto set my hand and seal this 17th day of September, A. D. 1862.

(Signed) ALFRED HATLEY. [SEAL]

Witness:

J. M. McCORKLE,

D. M. MOYER.

The plaintiffs objected to the introduction of this record. The objection was overruled and the petitioners excepted. There was no probate of the will on the record and no other reference to the paper-writing except as above stated.

B. B. Coggin testified as follows:

"I am clerk of the Superior Court of Stanly County. I have searched my office thoroughly for any record of administration or executorship on the estate of Alfred Hatley, deceased, and did not find any. I have searched my office thoroughly for any record of administration or executorship in regard to the estate of W. I. L. Hatley, and did not find any. I have examined the files in my office for the original will of Alfred Hatley, and did not find it after a thorough search. I have made a thorough search in my office for a record of the court of pleas and quarter sessions pertaining to the probate of this will of Alfred Hatley, deceased, and do not find any record whatever pertaining to the probate of said will.

"I do not pretend to say that the record of the proceedings of the court of pleas and quarter sessions is complete. I found connecting dates is what I had reference to. There were different records of that court kept when they were sitting as a civil court and when they were sitting in criminal cases, etc., I found; and I could not say that I searched over all these different records."

It was admitted that Margaret Hatley, widow of Alfred Hatley, continued in possession of all of said land after the death of her husband and continued to receive and enjoy the rents and profits of the same until her death in September, 1912, and that since her death the defendants have been in possession of said land and have been enjoying the rents and profits thereof.

The defendants also introduced in evidence a receipt signed by the petitioner Mary Poplin, in September, 1912, for $50 for payment on land, and also another receipt for $50 signed by R. A. Hatley for payment on land, and offered evidence tending to prove that these two amounts of $50 each were the amounts given by Alfred Hatley in his will to his two girls.

The petitioner R. A. Hatley was not examined as a witness and did not contradict the evidence of the defendants that he had received the $50 under the will of Alfred Hatley.

The petitioner Mary Poplin testified in regard to the receipts as follows:

"At the time the receipts were signed Rufe Hatley was the one who done most of the talking and I didn't have much to say. He tried to get them to have the land sold and pay up the burying expenses of their mother, but she would not do it, and he decided then that he would just take his money, and he taken his, and I told her that I wanted it fixed according to law and no hereafter about it, and she gave me the money then and Rufe Hatley signed the receipts, and she said to me, 'Are you fully satisfied?' I said, 'No, I am not; it seems to me that I ought to fare as one of the heirs out of pa's property.' I wanted my mother to have her pleasure on that place as long as she lived and I never inquired into it. She had charge and possession of all the land until her death. Her dower was never allotted to her. I claimed an interest in this land during the lifetime of my mother. I didn't want no rent from the place during her lifetime, and have not got any rents since her death. I lived there on that place till I was grown and have been living right here in Stanly County ever since except one year I lived in Anson County. My mother always told me the land was hers her lifetime to do as she pleased with it. I did not know that my father's will was on record. I first found out about the will when they fetched a copy out to my house last September two years ago. I never come to see about it. I received the $50 as stated in the receipt. It was nothing to me what land the payment was coming on. I had just received the money and they wrote out that little slip of paper. I received the money because she offered it to me, and I taken it and I thought I could hold the money till this thing was settled. The $50 can be got."

There was also evidence on the part of the defendants that the petitioners lived a short distance from the land in controversy and that they made no claim thereto until a short time before this proceeding was instituted.

There was a verdict and judgment for the defendants, and the plaintiffs appealed.

. *G. D. B. Reynolds and R. L. Smith for plaintiffs.*
*H. S. Williams and R. L. Brown for defendants.*

ALLEN, J. The statute now in force (Rev., sec. 3126) requires the clerk of the Superior Court to take in writing the proofs and examinations as to the execution of a will and to embody the substance thereof in his certificate of probate and that the certificate be recorded with the will; but at the time when the paper-writing offered in evidence by the defendants as the will of Alfred Hatley was placed on the records there was no such requirement.

The court of pleas and quarter sessions then had jurisdiction of the probate of wills, and there was at that time no provision in the statute requiring the taking of the proofs in writing nor for recording the probate. Revised Code, chapter 119, section 14.

The practice was to exhibit the will before the court and offer the proofs of execution, and for an entry to be made upon the minutes of the adjudication, and the clerk, acting upon the authority of the court, then recorded the will upon the will book. In most instances he also recorded a memorandum of the proceedings before the court, but this was not done in all cases, and it appears not to have been the practice in the county of Stanly, where this action was tried.

We have, then, the case of a paper-writing which is in its regular place upon the will book of the county, and which, without a memorandum of the probate appearing thereon, was placed there legally and under rightful authority, provided the court of pleas and quarter sessions admitted it to probate.

In the absence of proof, what is the presumption as to the action of the court? Is it presumed that the court did not act and did not admit the paper-writing to probate, or is the presumption to the contrary?

The paper is in its proper place on a record of the court, and it is there rightfully or wrongfully. Is the presumption that the officer who transcribed it did so legally or that he did so without legal authority? The authorities seem to be practically uniform in favor of the presumption that the officer acted regularly and in accordance with law.

"The general presumption is that public officers perform their official duty and that their official acts are regular, and where some preceding act or preëxisting fact is necessary to the validity of an official act the presumption in favor of the validity of the official act is presumptive proof of such preceding act or preëxisting fact." 22 A. and E. Ency., 1267.

"It will be presumed that public officers have been duly elected and that they have qualified; that their official acts are properly performed. and, in general, that everything in connection with the official act was legally done, whether prior to the act, as giving notice, serving process,

or determining the existence of conditions prescribed as a prerequisite to legal action." 16 Cyc., 1076.

"It is a rule of very general application that where an act is done which can be done legally only after the performance of some prior act, proof of the latter carries with it the presumption of the due performance of the prior act." *Knox County v. Bank,* 147 U. S., 91.

"The fact that an official marriage license was issued carries with it a presumption that all statutory prerequisites thereto had been complied with. This is the general rule in respect to official action, and one who claims that any such prerequisite did not exist must affirmatively show the fact." *Nofire v. United States,* 164 U. S., 657.

This principle has been applied in our State in *Clifton v. Wynne,* 80 N. C., 147; *Gregg v. Mallett,* 111 N. C., 76; *Morris v. House,* 125 N. C., 556; *Cochran v. Improvement Co.,* 127 N. C., 394, and in other cases.

In *Gregg v. Mallett, supra,* the Court says: "But by the general rules of evidence certain presumptions are continually made in favor of the regularity of proceedings and the validity of acts. It presumes that every man in his private and official character does his duty, until the contrary is proven. It will presume that all things are rightly done, unless the circumstances of the case overturn this presumption. Thus it will presume that a man acting in a public office has been rightfully appointed, that entries found in public books have been made by the proper officer, and like instances abound of these presumptions."

*Nelson v. Whitfield,* 82 N. C., 50, is almost directly in point. In that case the records had been destroyed and the original will could not be found, and the parties claiming under the will had to rely upon proof of its contents by witnesses who had seen the will on the record, but they were not able to furnish any evidence that it had been probated or that a certificate of probate was recorded, and the Court, dealing with this question, says: "At the date of the alleged execution of the will, the courts of pleas and quarter sessions had jurisdiction of the probate of wills and were directed to order them to be recorded in proper books kept for that purpose. They were to be recorded in these books after probate had. The fact, then, that the will of Benjamin Whitfield was found in a book kept by the clerk of court of pleas and quarter sessions in accordance with the requirements of law is *prima facie* evidence of the probate of the will. *Omnia presumuntur rite acta esse.* There was evidence, then, to go to the jury of the existence of the will of Benjamin Whitfield and that it had been duly proved and recorded."

This presumption in favor of the regularity and the legality of the action of the clerk who recorded the will is sustained by the facts and

circumstances appearing in evidence. The paper-writing has been upon the records for more than fifty years, and it has not been challenged until a short time before this proceeding was commenced. The devisees in the will have been in the exclusive possession of the property during this long time, and the petitioners lived within a short distance of them and knew that they were claiming and using the property as their own. The petitioners have accepted the sums of money given to them in the will and have retained it, and at the time of their acceptance, according to the evidence of the only one of the petitioners who was examined, a copy of the will was present.

· We are therefore of opinion that the paper-writing was properly admitted in evidence as the will of Alfred Hatley, and if evidence was offered in rebuttal of the presumption that it was properly probated, the weight of the evidence was for the consideration of the jury. It appears, however, that this rebutting evidence upon which the plaintiffs rely is not complete in that the clerk who made an examination of the records for the purpose of seeing if a minute of the probate could be found, admitted that he had not searched over all of the different records.

We might also rest our decision upon the ground that the petitioners, according to all of the evidence, and after a full knowledge of the facts, and when a copy of the will was present, accepted benefits under the will, and if so, they would not be heard to impeach its validity. *In re Will of Lloyd,* 161 N. C., 559.

We find no error in the record.

No error.