# NOFIRE *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF ARKANSAS.

No. 578.   Submitted December 15, 1896. — Decided January 4, 1897.

The fact that a marriage license has been issued carries with it a presumption that all statutory prerequisites thereto have been complied with, and one who claims to the contrary must affirmatively show the fact.

Persons coming to a public office to transact business who find a person in charge of it and transacting its business in a regular way, are not bound to ascertain his authority to so act; but to them he is an officer *de facto*, to whose acts the same validity and the same presumptions attach as to those of an officer *de jure*.

The evidence shows that the deceased sought, in his lifetime, to become a citizen of the Cherokee Nation, took all the steps he supposed necessary therefor, considered himself a citizen, and that the Cherokee Nation in his lifetime recognized him as a citizen and still asserts his citizenship. *Held*, that, under those circumstances, it must be adjudged that he was a citizen by adoption, and consequently that the jurisdiction over the offence charged is, by the laws of the United States and treaties with the Cherokee Nation, vested in the courts of that Nation.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Whitney* for defendants in error.

No appearance for plaintiffs in error.

MR. JUSTICE BREWER delivered the opinion of the court.

Plaintiffs in error were indicted in the Circuit Court of the United States for the Western District of Arkansas for the murder of Fred. Rutherford "at the Cherokee Nation in the Indian country," on December 15, 1895. They were tried in May, 1896, found guilty by the jury, and, on June 12, the verdict having been sustained, they were sentenced to be hanged.

The principal question, and the only one we deem it neces-

sary to notice, is as to the jurisdiction of the court. The defendants were full-blooded Cherokee Indians. The indictment charged that Rutherford was " a white man and not an Indian," but testimony was offered for the purpose of showing that although a white man he had been adopted into the Cherokee Nation, which, if proved, would oust the Federal court of jurisdiction within the rule laid down in *Alberty* v. *United States*, 162 U. S. 499. In that case it was held that the courts of the Nation have jurisdiction over offences committed by one Indian upon the person of another, and this includes, by virtue of the statutes, both Indians by birth and Indians by adoption. The Cherokee Nation claimed jurisdiction over the defendants. This claim was denied by the Circuit Court, which held that the evidence of Rutherford's adoption by the Nation was not sufficient, and that therefore the United States court had jurisdiction of the offence. An amendment in 1866 to section 5 of article 3 of the Cherokee constitution gives the following definition of citizenship: " All native-born Cherokees, all Indians and whites legally members of the Nation by adoption, . . . and their descendants, who reside within the limits of the Cherokee Nation, shall be taken and be deemed to be citizens of the Cherokee Nation." (Laws of Cherokee Nation, 1892, p. 33.) The Cherokee statutes make it clear that all white men legally married to Cherokee women and residing within the Nation are adopted citizens. (Sections 659, 660, 661, 662, 663, 666 and 667, Laws of the Cherokee Nation, 1892, pp. 329, and following.) Section 659 requires that before such marriage shall be solemnized the party shall obtain a license from one of the district clerks. Sections 660 and 661 provide that one applying for such license shall present to the clerk a certificate of good moral character, signed by at least ten respectable citizens of the Cherokee Nation, and shall also take an oath of allegiance. On October 4, 1894, Rutherford was married to Mrs. Betsy Holt, a Cherokee woman. The marriage license, with the certificate of the minister of the performance of the ceremony, and the indorsement of the record of the certificate, is as follows:

"*Marriage license.*

"CHEROKEE NATION, TAHLEQUAH DISTRICT.

"To any person legally authorized, greeting:

"You are hereby authorized to join in the holy bonds of matrimony and celebrate the rites and ceremonies of marriage between Mr. Fred. Rutherford, a citizen of the United States, and Mis' Betsy Holt, a citizen of the Cherokee Nation, and you are required to return this license to me for record within thirty days from the celebration of such marriage, with a certificate of the same appended thereto and signed by you.

"Given under my hand and seal of office this the 28th day of August, 1894.

[Seal of Tahlequah district, Cherokee Nation.]

"R. M. DENNENBERG,
"*Deputy Clerk, Tahlequah District.*

"This certifies that Mr. Fred. Rutherford, of Tahlequah district, C. N., I. T., and Mrs. Betsy Holt, of Tahlequah dist., Cherokee Nation, I. T., were by me united in the bonds of marriage at my home on the 4th day of October, in the year of our Lord eighteen hundred and ninety-four, conformable to the ordinance of God and the laws of the Cherokee Nation.

"EVANS P. ROBERTSON,
"*Minister of the Gospel.*

"S. E. ROBERTSON,
"*Witness present at the Marriage.*

"I hereby certify that the within certificate of marriage has this day been by me recorded on page 28, Record of Marriages, in the clerk's office in Tahlequah district, Cherokee Nation, this February 4th, 1896.

[Seal of the Tahlequah district, Cherokee Nation.]

"ARCH SPEARS,
"*Deputy Clerk, Tahlequah District, Cherokee Nation.*"

The performance of the marriage ceremony was also proved by the minister, a regularly ordained Presbyterian preacher. T. W. Triplett was the clerk of the Tahlequah district at the date of this certificate. R. M. Dennenberg was his deputy,

but at the time of the issue of the license both the clerk and his deputy were absent, and the signature of the deputy was signed by John C. Dennenberg, his son. The clerk, the deputy and his son, each testified that the latter was authorized to sign the name of the clerk or the deputy in the absence of either, and that the business of the office was largely transacted by this young man, although not a regularly appointed deputy. He made quarterly reports, fixed up records and issued scrip, and his action in these respects was recognized by the clerk and the Nation as valid. No petition, as required by the statute, was found among the papers of the office, but there was testimony that all the papers of the office had been destroyed by fire since the date of the marriage license, and the younger Dennenberg testified that a petition was presented containing the names of ten citizens; that he could not remember the names, but, at the time, made inquiry and satisfied himself that they were all respectable Cherokee citizens. There was testimony also that Rutherford offered to vote at an election subsequent to his marriage; that his vote was challenged, and on inquiry it was ascertained that he was a Cherokee citizen, and his vote received. Upon these facts the question is presented whether Rutherford was a Cherokee citizen by adoption. The Circuit Court held that the evidence was insufficient to show that fact, and that therefore that court had jurisdiction.

With this conclusion we are unable to concur. The fact that an official marriage license was issued carries with it a presumption that all statutory prerequisites thereto had been complied with. This is the general rule in respect to official action, and one who claims that any such prerequisite did not exist must affirmatively show the fact. *Bank of the United States* v. *Dandridge*, 12 Wheat. 64, 70; *Rankin* v. *Hoyt*, 4 How. 327; *Butler* v. *Maples*, 9 Wall. 766; *Weyauwega* v. *Ayling*, 99 U. S. 112; *Gonzales* v. *Ross*, 120 U. S. 605; *Callaghan* v. *Myers*, 128 U. S. 617; *Keyser* v. *Hitz*, 133 U. S. 138; *Knox County* v. *Ninth National Bank*, 147 U. S. 91, 97. In this last case it is said "it is a rule of very general application, that where an act is done which can be done

legally only after the performance of some prior act, proof of the later carries with it a presumption of the due performance of the prior act."

It is true that the younger Dennenberg, who signed the marriage license, was neither clerk nor deputy, but he was an officer *de facto*, if not *de jure*. He was permitted by the clerk and the deputy to sign their names; he was the only person in charge of the office; he transacted the business of the office, and his acts in their behalf and in the discharge of the duties of the office were recognized by them and also by the Cherokee Nation as valid. Under those circumstances his acts must be taken as official acts, and the license which he issued as of full legal force. As to third parties, at least he was an officer *de facto*; and if an officer *de facto*, the same validity and the same presumptions attached to his actions as to those of an officer *de jure*.

Again, it is evident that Rutherford intended to change his nationality and become a Cherokee citizen. He took the steps which the statute prescribed and did, as he supposed, all that was requisite therefor. He was marrying a Cherokee woman, and thus to a certain extent allying himself with the Cherokee Nation. He sought and obtained the license which was declared legally prerequisite to such marriage if he intended to become an adopted citizen of that Nation. That he also obtained a marriage license from the United States authorities does not disprove this intention. It only shows that he did not intend that there should be any question anywhere, by any authority, as to the validity of his marriage. He asserted and was permitted to exercise the right of suffrage as a Cherokee citizen. Suppose, during his lifetime, the Cherokee Nation had asserted jurisdiction over him as an adopted citizen, would he not have been estopped from denying such citizenship? Has death changed the significance of his actions? The Cherokee Nation not only recognized the acts of young Dennenberg as the acts of the clerk, but since the death of Rutherford it has asserted its jurisdiction over the Cherokees who did the killing — a jurisdiction which is conditioned upon the fact that the party killed was a Cherokee citizen.

It appears, therefore, that Rutherford sought to become a citizen, took all the steps he supposed necessary therefor, considered himself a citizen, and that the Cherokee Nation in his lifetime recognized him as a citizen and still asserts his citizenship. Under those circumstances, we think it must be adjudged that he was a citizen by adoption, and consequently the jurisdiction over the offence charged herein is, by the laws of the United States and treaties with the Cherokee Nation, vested in the courts of that Nation.

*The judgment of the Circuit Court must be reversed and the case remanded with instructions to surrender the defendants to the duly constituted authorities of the Cherokee Nation.*