[Civ. No. 928.     Third Appellate District.—July 16, 1912.]

THE OAKLAND PAVING COMPANY, a Corporation, Appellant, v. ROBERT T. DONOVAN, as Administrator of the Estate of MARGARET A. DONOVAN, Deceased, Respondent.

STREET ASSESSMENT—VALIDITY OF LIEN—DOCUMENTS AUTHENTICATED BY ACTING SUPERINTENDENT OF STREETS—POSSESSION OF OFFICE—ERROR IN EXCLUDING EVIDENCE.—In an action to enforce the lien of a street assessment, where all of the documents relating to the proceedings appear to have been authenticated by an acting superintendent of streets, during the absence of the legal officer on leave, it was error to exclude evidence that the legal superintendent was not then in the actual possession of the office or performing its duties, that the person authenticating such documents was then in the actual possession of the office and performed all of its duties during the period involved, and was reputed to have official authority to perform its duties, and that the community accordingly acquiesced, though his assumed appointment thereto was invalid, for want of authority to make it.

ID.—DEFINITION OF "OFFICER DE FACTO"—ACTS INVOLVING PUBLIC OR PRIVATE RIGHTS—COLOR OF APPOINTMENT, OR PUBLIC ACQUIESCENCE. An officer *de facto* is one whose acts, though not those of a lawful officer, are such as the law, upon principles of policy and justice, will hold valid so far as involving the interest of the public or third parties, where either the officer acts under color of a known appointment, which is void for want of power in the electing or appointing body, or where, without opposition, the duties of the officer are notoriously discharged by a person in an official capacity, the public apparently acquiescing and those in authority approving, in which case these circumstances give rise to an appearance of right imparting official reputation, upon which third parties are justified in regarding such person as an officer.

ID.—TITLE OF OFFICER DE FACTO NOT COLLATERALLY ASSAILABLE AS TO THIRD PARTIES.—When a person is found in charge of a public office, and transacting business in a regular way, under an assumption of right to act as the officer charged with the duties of such office, third parties are not bound to ascertain his authority so to act, but as to them, the courts will hold him to be an officer *de facto,* and will not permit his title to be collaterally assailed.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Johnson & Shaw, for Appellant.

W. J. Donovan, and R. M. F. Soto, for Respondent.

CHIPMAN, P. J.—This action was commenced to enforce a street assessment lien for work done in the city of Oakland under the so-called Vrooman act (Stats. 1885, p. 147, and acts amendatory thereof previous to 1904). The resolution of intention was adopted March 7, 1904, and the work was done pursuant to contract duly let, as appears from the complaint and is not denied. It is further alleged in the complaint that the superintendent of streets of the city of Oakland made, issued and recorded the assessment-roll, authenticated the record thereof and recorded the return on the warrant. The answer denied that the superintendent of streets did any of the acts so alleged to have been performed by him and at the trial defendant had judgment, from which and the order denying its motion for a new trial plaintiff appeals. We take, from appellant's opening brief, the following statement which correctly shows, in part, what occurred at the trial:

"Plaintiff offered, but was not permitted to introduce in evidence, a warrant, assessment and diagram, made and signed by W. W. Blair, acting superintendent of streets of the city of Oakland, which were recorded by W. W. Blair, acting superintendent of streets of said city, in a book kept by the superintendent of streets of the city of Oakland in his office for that purpose. Plaintiff also offered in evidence a contractor's return, which was filed in the office of the superin-

tendent of streets and recorded therein by W. W. Blair, acting superintendent of streets, and an original contract upon which the assessment was based, which was recorded by W. W. Blair, acting superintendent of streets, in a book kept by the superintendent of streets of the city of Oakland, in his office for that purpose, and said record was signed by W. W. Blair, acting superintendent of streets. Plaintiff introduced in evidence a resolution, adopted by the board of public works of the city of Oakland on August 16, 1905, granting Charles F. Ott, superintendent of streets of the city of Oakland, a leave of absence for sixty days. Plaintiff then offered, but was not permitted to introduce in evidence, a resolution of the board of public works, to show that on said sixteenth day of August, 1905, said board of public works of the city of Oakland appointed W. W. Blair acting superintendent of streets for and during the time the said Charles F. Ott was absent from the city of Oakland, and by said appointment authorized and appointed said W. W. Blair to do and perform all acts and things required by law of the superintendent of streets to be done and performed, and such other acts and things as may be required of him by the general laws of the state of California and the charter of the city of Oakland. Plaintiff then called and examined witnesses who were not permitted by the court to answer questions:

"1. As to whether or not Charles F. Ott was in possession of the office of superintendent of streets of the city of Oakland, and performed the duties of the office at any time during the period in question;

"2. As to whether or not W. W. Blair was in the actual possession of the office of superintendent of streets and performed all the duties of the office during all of the time of the period in question;

"3. As to whether or not said W. W. Blair was reputed to have official authority to exercise and perform the duties of the superintendent of streets of the city of Oakland;

"4. As to whether or not the community accordingly acquiesced."

The acts performed by Blair were done at dates within sixty days after August 16, 1905.

The trial was commenced on January 8, 1910, and W. W. Blair testified that he had been connected with that office for

over five years; that a sufficient certificate was made and signed by the city engineer describing the work performed by plaintiff, which was indorsed at the foot: "Recorded September 6th, 1905.    W. W. Blair, acting Superintendent of Streets of the City of Oakland."    The usual certificate of assessment and diagram were similarly certified on the same date.    A warrant, made and signed in the same manner, of like date, countersigned by the mayor of the city of that date, was also produced; also a contractor's return "Recorded October 4th, 1905, all attached to each other."    It was admitted by defendant's counsel that the book offered in evidence by plaintiff was a book coming from the superintendent's office "which is used for the purpose of recording assessments and another book which is used for the purpose of recording the contracts and bonds," and that in these books "were copied the papers that you have offered in evidence and are authenticated by Mr. Blair in some capacity; that the return thereon is on file and the record is in the hands of Mr. Ott.    I admit all the papers have been copied in the book.    I don't mean they are recorded there, copied as a matter of fact and that the record purports to be signed on October 4th, 1905."    The offer of the books and other documents was objected to and objection sustained on the ground that the documents therein appearing "purport to be authenticated and in fact were authenticated by W. W. Blair, acting superintendent of streets, and that he has no authority to authenticate said record."    It was further admitted by the attorney for defendant "that the ordinary course of business was pursued, save whatever was done was done by Mr. Blair, purporting to act as acting superintendent of streets, and was authenticated in the usual way, except that the record purported to be authenticated in the same capacity as the other instruments."

It thus appears that plaintiff complied in all respects with the law, except that his documents were authenticated by one who was assuming to act as superintendent of streets in the absence of the duly appointed and qualified superintendent.

The objection to the introduction of these documents and the evidence offered went to the authority of Blair to perform the duties of superintendent of streets.    In ruling on this objection the learned trial judge said: "It will have to be sustained

on the theory that he was not an officer, and did not have the authority. That is all I pass upon.''

The resolution of the board of public works granting a leave of absence to Mr. Ott recites that he is superintendent of streets, and we understand it to be an admitted fact that he was such officer at the time. Appellant rests its claim that the court erred in refusing the offered evidence on the proposition that, if not an officer *de jure,* Blair was an officer *de facto,* and that evidence tending to prove that he was superintendent of streets *de facto,* acting under color of title, was admissible to show that his acts were valid as far as the public and third persons are concerned.

The position taken by respondent may be thus summarized: ''That unless the Vrooman act controls, the authority to create the office of acting superintendent of streets, such office being a municipal affair, reposes in the city council'' (Oakland Freeholders' Charter, secs. 73, 195, 199, 201–204; Stats. 1889, p. 513) ; that if the city charter is inadequate to control the situation the Vrooman act, section 34, subdivision 8, confers the power to appoint a superintendent of streets upon the city council (Stats. 1885, pp. 147, 164) ; that the charter of the city provides that if a vacancy occur it shall be filled by the appointment of the mayor (Stats. 1889, sec 302, *supra*) ; that there is but one office, filled by an incumbent *de jure*—Blair being purely a private individual in all that he did as acting superintendent of streets. Hence, all the acts of Blair in his assumed official capacity were nullities. Finally, respondent dismisses the contention that Blair was an officer *de facto* with the statement that ''he did not claim to act as superintendent; for he could not do so since there was an incumbent of the office *de jure.* Blair assumed to act only as acting superintendent and by virtue of the supposed appointment of the board of public works, which was absolutely without authority. Hence, Blair was not, as he could not be, acting under color of authority. There was, moreover, no office of acting superintendent.''

Appellant contends, and section 73 of the Oakland charter (Stats. 1889, page 540) provides, that the board of public works shall have authority to appoint the superintendent of streets, and requires him to keep a public office in which shall be kept the records of his office and a register of all streets

accepted by the city and he shall have power to perform the duties required of that officer by the so-called Vrooman act of 1885 and amendatory acts; that the power is given the board to remove such officer and appoint another to perform the duties of his office. It is undisputed that there was, at the time involved, a superintendent of streets *de jure,* then on leave of absence; that there was no such officer known to the Oakland charter or to the general law as an acting superintendent of streets; nor was there any provision of law, so far as we know, authorizing such officer to act in the absence or inability of the superintendent. Provisions for filling a vacancy apply to vacancies created by death, resignation, removal from or expiration of the term of office. They do not apply to temporary absences from duty. The sole question, then, is whether, in view of the circumstances, the principle under which the acts of officers *de facto* are held to be valid as affecting the public and third parties, should be applied in the present case.

This principle is of very ancient origin and, as administered in England and in this country, the rule does not materially differ. In some early English cases it is said that, in order to constitute one an officer *de facto,* it is necessary that his claim to the office should be supported by some form of color of an election, and these cases have had some following in the United States. But in a later English case, Lord Ellenborough defined an officer *de facto* to be "one who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law" (*Rex* v. *Bedford Level,* 6 East, 356); and Mr. Mechem says: "This definition has, in substance, been adopted by the majority of the cases, and the necessity for a color of election has not been affirmed so far as the rights of third persons are concerned." (Mechem on Offices and Officers, secs. 317, 318. See 8 Am. & Eng. Ency. of Law, 2d ed., pp. 815, 816.)

*State* v. *Carroll,* 38 Conn. 449, [9 Am. Rep. 409], is a leading case, frequently cited with approval. Said Butler, C. J.: "The *de facto* doctrine was introduced in the law as a matter of policy and necessity, to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office without being lawful officers. It was seen that the public could

not reasonably be compelled to inquire into the title of an officer nor be compelled to show a title, and these became settled principles in the law. But to protect those who dealt with such officers when apparent incumbents of offices under such apparent circumstances of reputation or color as would lead men to suppose they were legal officers, the law validated their acts as to the public and third persons on the ground that, as to them, although not officers *de jure,* they were officers in fact, whose acts public policy required should be considered valid.''

Two different persons cannot, at the same time, be in actual occupation and exercise of an office for which one incumbent only is provided by law. If the officer *de jure* is in, i. e., is performing the duties of the office, there is no room for an officer *de facto.* And it is also true that there can be no officer *de facto* where no officer *de jure* is provided by law. There may be officers *de facto* but cannot be an office *de facto* under a constitutional government.

The lawful acts of an officer *de facto,* so far as the rights of third persons are concerned, are, if done within the scope and by the apparent authority of the office, as binding as if he were an officer legally elected and qualified and in full possession of it. (Mechemon Offices and Officers, sec. 322 et seq.)

In the case now here, the office, the duties of which for the time were being performed by Blair, existed; the evidence offered tended to show that Blair was in full possession of this office in the absence of the officer *de jure;* was performing that officer's duties admittedly within the scope of the office; was holding himself out to the world and was reputed to be legally exercising these duties; was in charge of the books and records of the office and, to every appearance, was the superintendent of streets, acting as such and so recognized by the public and in fact the officer he represented himself to be. It seems to us that if the facts were such as the offered evidence tended to establish the plaintiff had a right to deal with Blair as authorized to act as superintendent of streets and his acts as such should be given validity. It was error, therefore, to refuse the offered evidence.

The rights of plaintiff are not to be made to depend upon the power of the board of public works to appoint Blair as acting superintendent of streets, but rather upon the facts as

they existed at the time with reference to the execution of the duties of the office of superintendent of streets as plaintiff found them to exist and being performed.   Plaintiff was not required to investigate Blair's title or authority to act in the capacity in which he was assuming to act.   It was sufficient for plaintiff that it found him in possession of the office and all its records, invested with its insignia, was being treated and was regarded by the public as rightfully performing the duties of the office.   (*State* v. *Barnard,* 67 N. H. 222, [68 Am. St. Rep. 648, 29 Atl. 410].)

The definition given by Chief Justice Butler, in *State* v. *Carroll, supra,* has met with the very general approval of the courts as perhaps the most comprehensive yet given.   He said:

"An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public or third persons, where the duties of the officer were exercised:

"First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be;

"Second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like;

"Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such as ineligibility, want of power, or defect being unknown to the public;

"Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such."

This definition embraces the case of an officer assuming to act, under the circumstances stated, "without a known appointment or election"; and it also embraces the case of an officer acting, as here, under color of a known appointment, void, it may be admitted, "because there was a want of power in the electing or appointing body."   The validity of the ap-

pointment cannot be the true test for if the appointment be valid the appointee would be an officer *de jure.* The very purpose of the doctrine is to protect the public and third persons where officers are assuming to act as such without strict legal right and there is an appearance or color of title, but which is in fact no title.

Where, without opposition, the duties of an officer are notoriously discharged by a person in an official capacity, the public apparently acquiescing and those in authority approving, these circumstances give rise to an appearance of right imparting official reputation, upon which third parties are justified in regarding such person as an officer. Finding a person in charge of a public office and transacting its business in a regular way under an assumption of right to act as the officer charged with the duties of such office, third parties are not bound to ascertain his authority so to act, but as to them the courts will hold him to be an officer *de facto* and will not permit his title to be collaterally assailed. (*Nofire* v. *United States,* 164 U. S. 657, [41 L. Ed. 588, 17. Sup. Ct. Rep. 212] ; *Gonzales* v. *Ross,* 120 U. S. 605, [30 L. Ed. 801, 7 Sup. Ct. Rep. 705] ; *McDowell* v. *United States,* 159 U. S. 596, [40 L. Ed. 271, 16 Sup. Ct. Rep. 111] ; *Susanville* v. *Long,* 144 Cal. 362, [77 Pac. 987] ; *Petersilea* v. *Stone,* 119 Mass. 465, [20 Am. Rep. 335].) Numerous other cases to like effect might be cited. The subject will be found to be sufficiently expounded in the following cases: *State* v. *Carroll,* 38 Conn. 449, [9 Am. Rep. 409] ; *Hamlin* v. *Kassafer,* 15 Or. 456, [3 Am. St. Rep. 176, 15 Pac. 778] ; *Jewell* v. *Gilbert,* 64 N. H. 13, [10 Am. St. Rep. 357, 5 Atl. 80].

The judgment and order are reversed.

Hart, J., and Burnett, J., concurred.