[Civ. No. 2895. First Appellate District, Division Two.—August 15, 1919.]

## L. L. PAGE, Respondent, v. LUCIO M. MINTZER et al., as Executors, etc., Appellants.

[1] STREET LAW—ABSENCE OF SUPERINTENDENT OF STREETS—PERFORMANCE OF DUTIES BY ASSISTANT—VALIDITY OF ACTS.—Where, during the absence of the superintendent of streets on leave, his assistant, a minor, whom he had appointed and whose appointment was approved by a resolution of the city council, but who never took oath of office or filed a bond, had complete charge of his office, and while thus in charge executed contracts for street work and signed certain extensions of time for the performance thereof, each time signing the name of the superintendent of streets "by" himself, as "assistant superintendent of streets," or an abbreviation of that title, such assistant was, as to third persons dealing with him in good faith, the *de facto* officer, and the same validity and the same presumptions attached to his actions as to those of an officer *de jure*.

[2] ID.—ACTION TO FORECLOSE LIEN—FAILURE TO APPEAL—JUDGMENT—MISCARRIAGE OF JUSTICE.—Where, in an action to foreclose a lien for street work performed under a contract thus executed, it appears that the steps necessary to vest the city council with jurisdiction to order the work done were duly taken, the work done satisfactorily and at the prices fixed by the council in its acceptance of the bid of the plaintiff, and no appeal from the assessment was made by the defendant to the council, it cannot be held that judgment of the trial court foreclosing the lien constituted a miscarriage of justice.

---

1. Deputy as public officer, note, **Ann. Cas.** 1913C, 88.

APPEAL from a judgment of the Superior Court of Contra Costa County. R. H. Latimer, Judge. Affirmed.

The facts are stated in the opinion of the court.

John F. Cassell for Appellants.

Johnson & Shaw for Respondent.

BRITTAIN, J.—The defendant property owners appeal from a judgment foreclosing the lien of a street assessment in the city of Richmond. The only question is as to the validity of certain acts performed by the assistant superintendent of streets.

There is no question regarding the proceedings by which the city council acquired jurisdiction to order the work to be done. Upon proper advertisement the plaintiff's bid for the work was properly accepted. It is not suggested that the work was not well done, within reasonable time, in entire accord with the specifications, and for the agreed price. There is no question of the regularity or fairness of the distribution of the cost upon the property. It is not suggested that the defendants' property was not directly benefited by the work nor that the assessment on defendants' lots was not in proportion to the benefits received.

[1] The work was done under the Vrooman Act, [Stats. 1885, p. 147], which requires that after the award has been made the superintendent of streets shall enter into a contract with the successful bidder, and in the contract fix the time for the commencement and completion of the work, which time may be extended under certain conditions by the superintendent of streets. From the record in the present case it appears that long prior to the institution of the proceedings involved, one Blankenship, who was the superintendent of streets, appointed an assistant, W. D. Boswell, whose appointment was approved by a resolution of the city council. About the time the bid of the plaintiff was accepted, by another resolution of the council, Blankenship, the superintendent of streets, was granted a leave of absence for two weeks. The contract, which in neither form nor substance is objected to by the defendants, was signed by the contractor on December 30, 1908. At that time Blankenship

was absent from the city of Richmond. He returned on January 2, 1909. When the contractor signed the contract Boswell was in entire charge of the business office of the superintendent of streets. During the absence of Blankenship he transacted all the business of the superintendent of streets with members of the city government, contractors, employees of the street department, and others. When the contractor signed the contract he paid to Boswell for the city four hundred dollars required to cover preliminary expenses, whereupon Boswell, with a rubber stamp, appended to the contract the name of "N. M. Blankenship, Superintendent of Streets of the City of Richmond," and wrote beneath it, "By W. D. Boswell, Assistant Superintendent of Streets." The contract was then attested, "signed, sealed and delivered in the presence of H. H. Turley, City Clerk." In the contract the time of commencement and completion of the work was fixed. Subsequently, Blankenship was succeeded in office by R. L. Fernald, and Boswell continued as assistant superintendent of streets. The city council granted certain extensions of time for the completion of the work. The Vrooman Act provides that the superintendent of streets may extend the time under the direction of the city council. One of the extensions was under the incumbency of Blankenship, and one during that of Fernald. Both times the name of the superintendent of streets was signed by Boswell, who in one instance added after his name. "Ass't Supt. of Sts.," and in the other, "Ass't." Boswell never took oath of office, he filed no bond, and when the contract was signed he was but nineteen years old.

It is maintained by the appellants that there was no contract signed by the superintendent of streets; that because the superintendent of streets was absent at the time the purported contract was signed, he did not exercise the discretion vested in him in fixing the time of commencement and completion of the work, and that in no case did the superintendent of streets extend the time in accordance with the provisions of the statute. It is argued that Boswell did not pretend to act independently as a *de facto* officer, because he signed the contract in the name of the superintendent of streets; that there was no *de jure* office of assistant superintendent of streets, and, therefore, there

could not be a *de facto* holder of the nonexistent office; that he was not a deputy superintendent of streets, because the utmost that he could have claimed was that he acted under the resolution approving his appointment, and all he did claim was that he was assistant superintendent of streets; that the superintendent of streets did not and could not delegate to Boswell the performance of the functions imposed by the Vrooman Act on the superintendent of streets; and, that the contractor in dealing with the public official was charged with notice of the extent and limitations of his authority.

The learned judge of the trial court showed himself to be one of those to whom Mr. Justice Oliver Wendell Holmes referred in his classic on the Common Law (page 36) when he said, "the law is administered by able and experienced men who know too much to sacrifice common sense to a syllogism." He properly decided that under the facts the property owner should pay for the work which had been done.

The supreme court of the United States exercised the same common sense in a case in which it denied the jurisdiction of the circuit court to try a Cherokee Indian for the murder of a white man. The Cherokee Nation claimed jurisdiction over the defendants upon the theory that the murdered man was an Indian by adoption by reason of his having married a Cherokee woman. At the time the marriage license was issued one Triplett was the clerk and R. M. Dennenberg, his deputy. Both the clerk and his deputy were absent, and the name of the deputy was signed to the license by his son. Substantially the same contentions were made in that case as here concerning the validity of the document in question. In holding the marriage license to be valid, the supreme court said: "It is true that the younger Dennenberg, who signed the marriage license, was neither clerk nor deputy, but he was an officer *de facto,* if not *de jure.* He was permitted by the clerk and the deputy to sign their names; he was the only person in charge of the office; he transacted the business of the office, and his acts in their behalf and in the discharge of the duties of the office were recognized by them and also by the Cherokee Nation as valid. Under those circumstances his acts must be taken as official acts, and the license which

he issued as of full legal force. As to third parties, at least he was an officer *de facto;* and if an officer *de facto,* the same validity and the same presumptions attached to his actions as to those of an officer *de jure."* (*Nofire* v. *United States,* 164 U. S. 657, [41 L. Ed. 588, 17 Sup. Ct. Rep. 212, see, also, Rose's U. S. Notes].) The fact that Boswell was a minor does not militate against the rule declared in the Nofire case. (*Wimberly* v. *Boland,* 72 Miss. 241, [16 South. 905]; *People* v. *Dean,* 3 Wend. (N. Y.) 438; *Hooper* v. *Goodwin,* 48 Me. 79, 80.)

In the Nofire case the deputy's name was signed by his son without the addition of the son's name. In this case the name of the superintendent of streets was signed with the addition of the name of the assistant. No reason appears to exist for holding either the contract or any extension of time invalid because Boswell signed his name, when, under the rule in the Nofire case, they would have been held valid if he had failed to sign his name.

While there is some difference in the facts of the two cases, the reasoning of the court in *Oakland* v. *Donovan,* 19 Cal. App. 488, [126 Pac. 388], in holding valid a contract signed by an acting superintendent of streets, applies to this case. When one is in charge of the physical office of a public official and is performing the duties of the office he is, as to third persons dealing with him in good faith, the *de facto* officer.

[2] The Vrooman Act provides for appeals, and section 11 (Stats. 1885, p. 157) expressly provides that no assessment shall be held invalid except upon appeal to the city council for any error, informality, or any defect in any of the proceedings prior to the assessment, where jurisdiction to order the work to be done has been established by publication of the resolution of intention. In the present case there is no record of any appeal having been made by the property owner to the council. As has been stated, the work was done satisfactorily and at the prices fixed by the council in its acceptance of the bid of the respondent, and under such circumstances it cannot be held that there was any error in the trial of the case which resulted in a miscarriage of justice. (Const., art. VI, sec. 4½.) The case appears to be within the rules of *Chase* v. *Trout,* 146 Cal. 350, [80

Pac. 81], and *Farley* v. *Reindollar,* 174 Cal. 707, [165 Pac. 19].

The judgment is affirmed.

Langdon, P. J., and Haven, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 13, 1919, and the following opinion then rendered thereon:

THE COURT.—The application for hearing in this court after decision by the district court of appeal of the first appellate district, division two, is denied.

In denying such hearing we are not to be understood as assenting to any view that if there was no valid contract for the doing of the work the judgment could nevertheless be affirmed for the reason that there was no appeal by the property owner to the council. We say this for the reason that the opinion may possibly be open to some such construction.

All the Justices concurred, except Olney, J., who did not participate.