TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 25-301 |
| of | : | |
| | : | December 4, 2025 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| MANUEL M. MEDEIROS | : | |
| Deputy Attorney General | : | |

Proposed Relator HIRAM SOTO (Relator) has applied for leave to sue the CITY OF POWAY in quo warranto to remove CHRISTOPHER PIKUS from office as a member of the Poway City Council. The application alleges that Pikus's appointment to the City Council was invalid because it was not supported by the necessary votes of a majority of the eligible councilmembers. Former Councilmember Brian Pepin voted in the majority, and Relator alleges that Pepin was not a resident of his electoral district at the time of the vote and was therefore no longer a qualified councilmember.

While quo warranto may have been available to directly challenge former Councilmember's *Pepin's* right to hold office after he allegedly vacated his district residence and before he cast his vote, Soto may not use the quo warranto remedy to oust current Councilmember *Pikus* from office by retroactively challenging Pepin's right to vote. In light of the de facto officer doctrine, which precludes such challenges, we conclude that Relator presents no substantial question of law or fact that warrants judicial resolution and that the public interest would not be served by granting Relator's application here. Accordingly, the application for leave to sue is DENIED.

## BACKGROUND

The critical facts here occurred within a two-month period between November 2024 and January 2025. On November 25, 2024, Councilmember Brian Pepin sent an

1

25-301

email to the Poway City Manager advising that he would be resigning his District 1 seat on the City Council "effective upon my seat being filled with a replacement."[1]  Although a city councilmember's resignation is generally made effective upon proper delivery of a letter of resignation, the letter may specify an effective date other than the date of delivery.[2]  Moreover, in cities that are divided into council districts, state law allows the resigning member to vote on the appointment of a successor.[3]  Following submission of his resignation, Pepin absented himself from the next two City Council meetings but attended a later meeting, at which he voted for his successor.[4]

When the City Council met on December 3, 2024, without Pepin in attendance, the Council voted to fill Pepin's seat by appointment, rather than by calling a special election.[5]  Two days before the January 21 meeting at which the appointment vote took place, Hiram Soto, our proposed relator, informed the City Attorney that Pepin had vacated his residence in District 1 of Poway "shortly after he submitted his resignation letter."[6]  According to Soto: "Mr. Pepin's residency in District 1 has been terminated, and he has not established a new residence within the district.  This renders him ineligible to continue as a council member, and an immediate vacancy must be declared pursuant to Poway Municipal Code Section 2.04.070(C)."[7]  That ordinance provides, in pertinent part: "Termination of residency in a district by a member of the City Council shall create an immediate vacancy for that Council district unless a substitute residence within the district is established within 30 days after the termination of residency."[8]

---

[1] Relator's Verified Statement of Facts, ¶ 2; *id.* at Exh. A; City's Verified Statement of Facts, ¶ 13.

[2] Gov. Code, § 1770, subd. (c)(2).

[3] Gov. Code, § 36512, subd. (e)(1).

[4] See City of Poway, City Council Regular Meeting Minutes (Dec. 3, 2024), https://tinyurl.com/32vpj8sa (Dec. 3 mins.); City of Poway, City Council Regular Meeting Minutes (Dec. 17, 2024), https://tinyurl.com/udys99ea (Dec. 17 mins.); City of Poway, City Council Regular Meeting Minutes (Jan. 21, 2025), p. 6, https://tinyurl.com/59y2tb25 (Jan. 21 mins.).

[5] Dec. 3 mins., *supra*, at p. 4.  Within 60 days from the commencement of a vacancy, a city council must either fill the vacancy by appointment or call a special election.  (Gov. Code, § 36512, subd. (b).)

[6] Declaration of Alan B. Fenstermacher in Support of City of Poway's Memorandum, Exh. 1, p. 11 (note from Soto to City Attorney Alan Fenstermacher) (Fenstermacher Decl.).

[7] *Id.* at Exh. 1, p. 12.

[8] Poway Mun. Code, § 2.04.070(C).

2

On January 21, the day of the scheduled meeting, the Poway City Attorney provided a legal memorandum to the City Council advising of his disagreement with Soto. He concluded that Pepin was still eligible to hold office "because he has not yet established a new 'domicile,' or legal residence" elsewhere.[9] The City Attorney reasoned that "residence" within the meaning of the Municipal Code is a term of art defined by the Elections Code as a person's domicile or legal residence.[10] He further reasoned that statutes and judicial precedent require that a person cannot lose their domicile until they have gained another.[11]

On the same date on which it received the memorandum, January 21, 2025, the City Council voted 3-2 to appoint Christopher Pikus to fill Pepin's anticipated vacancy.[12] Without apparent objection from the other members, Pepin voted on the appointment, completing the vote majority needed to appoint Pikus as his replacement. Immediately following the vote, Councilmember Pepin "exited the dais," and Pikus was sworn in and took his seat.[13]

On or about February 17, 2025, Soto applied to the Attorney General for leave to sue in quo warranto for the purpose of removing Councilmember Pikus from the District 1 seat.[14] Soto alleges that, prior to voting on his replacement, Pepin relinquished possession of his residence in Poway City Council District 1.[15] He alleges further that, "[b]ecause Mr. Pepin was not a *bona fide* member of the Poway City Council when he voted to appoint Pikus as the replacement representative for District 1, the appointment is invalid and Pikus does not lawfully hold any position on the Poway City Council."[16]

---

[9] Fenstermacher Decl., Exh. 1, p. 5.

[10] *Id.* at Exh. 1, pp. 5-6; Elec. Code, § 349, subd. (a) ("'Residence' for voting purposes means a person's domicile").

[11] Fenstermacher Decl., Exh. 1, pp. 6-8; see Gov. Code, § 244, subd. (c); *Walters v. Weed* (1988) 45 Cal.3d 1, 7. We express no view on the accuracy of the City Attorney's analysis in the circumstances here.

[12] Jan. 21 mins., *supra*, at p. 6.

[13] *Ibid.*

[14] See Cal. Code Regs., tit. 11, §§ 1, 2.

[15] Proposed Complaint, ¶ 8.E; Relator's Verified Statement of Facts, ¶ 6.B.

[16] Proposed Complaint, ¶ 8.F, capitalization altered. Relator also alleged that Pepin had executed a deed of trust to purchase a residence in Morgan Hill, California. (*Id.* at ¶ 8.D.) Relator has apparently abandoned the suggestion that the Morgan Hill home is Pepin's domicile after undisputed evidence showed that the deed of trust was, in fact, for the purpose of obtaining a home equity loan on property that Pepin had already owned for

(continued…)

3

The City of Poway opposes Soto's application.  Councilmember Pikus himself, though named as the "real party in interest," submitted no opposition.

The City does not deny that Pepin had vacated his residence in District 1, but—as the City Attorney previously opined—the City argues that Pepin's former residence constituted his "domicile," or legal residence, and that under applicable case law, his former home *remains* his "domicile" until he gains a new one.[17]

In support of the City's opposition, former Councilmember Pepin filed his own declaration, stating: "In November 2024, I vacated my residence at 13924 Olive Mesa Court in the City of Poway ('Poway Residence'), but as of January 21, 2025, I had not established a new permanent residence.  During that entire time period, I was on an extended trip with my family, working remotely while commuting back and forth to the area as needed, and evaluating where to live permanently."[18]

Relator's complaint seeks a judgment determining that the City did not comply with applicable laws in replacing Pepin, and determining "that the office Pikus purports to occupy on the Poway City Council is vacant as a matter of law."[19]  For the reasons explained below, we deny Relator's application to sue in quo warranto.

## ANALYSIS

"Quo warranto," literally meaning "by what authority," was a writ at common law by which the Crown instituted a formal inquiry into whether a subject had the right to hold public office.[20]  The remedy has evolved to become a judicial action brought by the

---

several years as long-term rental-investment property.  (See City of Poway's Memorandum in Opposition, pp. 7-8.)

[17] City of Poway's Memorandum in Opposition, pp. 13-14.  After we received the parties' initial submissions, Relator's attorney submitted additional materials alleging that newly discovered information showed Pepin had purchased residential real property in Florida around the time of the appointment vote.  The materials indicate that Pepin made an offer on the Florida property on December 29, 2024, and that the property was "sold" and "[u]nder [c]onstruction" on February 19, 2025.  The parties debate whether this demonstrates that Pepin had acquired a new out-of-state domicile as of the January 21 appointment vote.  We need not resolve this issue.  Even were we to accept Relator's interpretation of this information, our conclusion would remain unchanged in light of our analysis of the de facto officer doctrine below.

[18] Pepin Declaration, ¶ 8.

[19] Proposed Complaint, Prayer ¶ A.1, capitalization altered.

[20] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875 (*Rando*); 101 Ops.Cal.Atty.Gen. 76, 77 (2018).

4

25-301

sovereign people of the state, through their attorney general, to try a public officer's right to hold the public office. In California, the remedy is codified in section 803 of the Code of Civil Procedure.[21] An individual (known as the "relator") who seeks to bring a quo warranto action must first obtain the consent of the Attorney General.[22] The decision whether to grant that consent (also known as "leave to sue") lies within the Attorney General's broad discretion.[23]

In deciding whether to grant leave to sue, we do not resolve the merits of the dispute itself; we only decide whether quo warranto is an available and appropriate remedy, whether the application presents a substantial issue of fact or law that warrants judicial resolution, and whether granting the application will serve the public interest.[24]

In this case, we conclude that Relator's proposed use of the quo warranto remedy to oust Christopher Pikus runs afoul of the "de facto officer doctrine." Accordingly, no substantial issue of law or fact is presented that warrants judicial resolution in the public interest.

## 1. Quo Warranto Is the Appropriate Legal Process for Testing an Officer's Title to a Public Office

The first question we address is whether quo warranto would be the appropriate legal means for ousting Pikus from office, assuming there is a basis to remove him. It would. Indeed, quo warranto is the only legal method for determining title to a public

---

[21] The statute provides in relevant part: "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state." (Code Civ. Proc., § 803.)

[22] *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1228-1229. Quo warranto actions are brought by the Attorney General, in the name of the People of the State of California, and may be "on relation" (*ex rel.*) of a private person. (See *People ex rel. Leavitt v. Bass* (1910) 15 Cal.App. 62, 66 ["Leavitt is merely the relator—the informant"]; *People ex rel. Goodell v. Garrett* (1925) 72 Cal.App. 452, 455; 73 Ops.Cal.Atty.Gen. 197, 201 (1990) [relator "acts merely as an informant"]; 35 Ops.Cal.Atty.Gen. 198, 199 (1960) [same].)

[23] *Rando*, *supra*, 228 Cal.App.4th at pp. 877-878.

[24] *Rando*, *supra*, 228 Cal.App.4th at p. 879; 101 Ops.Cal.Atty.Gen. 16, 17 (2018); 87 Ops.Cal.Atty.Gen. 30, 31 (2004) (Attorney General makes no final judgment).

office.[25]  And the position of city councilmember is a public office for quo warranto purposes.[26]

Code of Civil Procedure section 803 specifies that "[a]n action may be brought by the attorney-general . . . upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office."  Commonly, an individual may challenge a city councilmember's eligibility to hold office by seeking Attorney General approval to bring a quo warranto action directly against that councilmember.[27]  Or, it may be the case that the city council has declared a seat vacant for a reason described in a statute or ordinance and has appointed a replacement.  In that scenario, the ousted councilmember may bring a quo warranto action against the appointed successor, for the purpose of proving that the city council erred and that the ousted officer is still entitled to the office.[28]  In either of these circumstances, the councilmember whose title to the office is being challenged is the plaintiff or the defendant and, as such, they are in a position to defend their right to hold office.[29]

In this case, quo warranto would have been available to directly challenge former Councilmember Pepin's right to hold office after he allegedly vacated his district residence.  But once Pepin left office, a quo warranto action to remove him was no longer available—the issue of Pepin's right to hold office was then moot.[30]  Relator therefore

---

[25] *People v. Olds* (1853) 3 Cal. 167, 170-176; *Hallinan v. Mellon* (1963) 218 Cal.App.2d 342, 344; 72 Ops.Cal.Atty.Gen. 15, 21 (1989) ("[Q]uo warranto is the only proper procedure to determine the right or title to a public office occupied by a de facto incumbent").

[26] See 99 Ops.Cal.Atty.Gen. 74, 76 (2016); 87 Ops.Cal.Atty.Gen., *supra*, at p. 31.

[27] See, e.g., *People ex rel. Schlesinger v. Sachs* (2023) 97 Cal.App.5th 800, 817 (in the usual quo warranto action "the burden is on the defendant office holder to show he or she is 'lawfully holding and exercising the office'"); 100 Ops.Cal.Atty.Gen. 26, 26 (2017) (city brings quo warranto action against councilmember for excessive absence).

[28] See, e.g., 103 Ops.Cal.Atty.Gen. 33, 36 (2020) (ousted councilmember sues putative successor; "it is *Relator's* eligibility, rather than *Defendant's*, that is ultimately at issue," italics in original); see also *People ex rel. Tracy v. Brite* (1880) 55 Cal. 79, 79.

[29] *People ex rel. Fleming v. Shorb* (1893) 100 Cal. 537, 541; *Klose v. Superior Court in and for San Mateo County* (1950) 96 Cal.App.2d 913, 917-918 (officer "may always have his day in court before it can be conclusively adjudged against him that the office was vacant at the time the appointment was made").

[30] *People ex rel. Strong v. City of Whittier* (1933) 133 Cal.App. 316, 324; see also *Citizens Utilities Co. v. Superior Court* (1976) 56 Cal.App.3d 399, 406; 96 Ops.Cal.Atty.Gen. 36, 42 (2013) (question whether assigned judge was unlawfully

(continued…)

25-301

proposes to sue the City of Poway and Councilmember Pikus to invalidate Pikus's appointment and oust Pikus from office. That is, Relator proposes to have Pepin's vote declared invalid retroactively, leaving Pikus one vote short of the necessary majority. As explained next, Pepin's vote cannot be challenged in these circumstances.

## 2. Under the De Facto Officer Doctrine, the Validity of Pepin's Vote Cannot Be Disputed, and, Therefore, Relator Presents No Substantial Question of Law or Fact for Judicial Resolution

The validity of Pepin's vote cannot be challenged retroactively. This is a consequence of the "de facto officer doctrine." Under the ordinary application of the doctrine: "The lawful acts of an officer *de facto*, so far as the rights of third persons are concerned, are, if done within the scope and by the apparent authority of office, as valid and binding as if he were the officer legally elected and qualified for the office and in full possession of it."[31]

Although Pepin's eligibility to hold office on January 21 was the subject of some disagreement, he was physically present at the meeting and was ready to vote. He was, that is, the "de facto" representative for District 1. "One who claims to be a public officer while in possession of an office, ostensibly exercising its functions lawfully and with the acquiescence of the public, is a de facto officer."[32]

The de facto officer doctrine is "of very ancient origin" and is grounded in public policy.[33] When a sitting officer takes official action, the public should not have to inquire whether the officer has a right to hold that office or compel the officer to prove their right

---

holding position was rendered moot by Chief Justice's order removing him from assignment); 84 Ops.Cal.Atty.Gen. 206, 207 (2001) ("An action in quo warranto to assert the claim of the relator to, or the usurpation by the de facto officer of, an office will not lie where the claim is not continuing").

[31] *In re Bunker Hill Urban Renewal Project 1B of Community Redevelopment Agency of City of Los Angeles* (1964) 61 Cal.2d 21, 41-42 (*Bunker Hill*); see also *People ex rel. Hoffman v. Hecht* (1895) 105 Cal. 621, 629-630; 95 Ops.Cal.Atty.Gen. 67, 70, fn. 13 (2012) (acts as planning commissioner valid even though office was forfeited by assumption of incompatible office); 82 Ops.Cal.Atty.Gen. 219, 223, fn. 3 (1999) (even "questionable appointees" "are de facto officers, and their actions would be valid and binding"); 74 Ops.Cal.Atty.Gen. 116, 121 (1991) (board member's votes valid even after he assumed incompatible office as county superintendent).

[32] *Ensher, Alexander & Barsoom, Inc. v. Ensher* (1965) 238 Cal.App.2d 250, 255 (*Ensher*); see also *Oakland Paving Co. v. Donovan* (1912) 19 Cal.App. 488, 493-494 (*Oakland Paving*).

[33] *Oakland Paving*, *supra*, 19 Cal.App. at p. 493.

7

to hold the office.  Instead, the actions of an apparent—de facto—officer will be deemed to be valid.[34]

The California Supreme Court's decision in *Marine Forests Society v. California Coastal Commission* is instructive.[35]  In *Marine Forests*, the Court considered an appellate court ruling that the statutory scheme for appointing members to the Coastal Commission violated the California Constitution's separation-of-powers provisions.  After the appellate court ruling, the Legislature amended the statute to cure the alleged constitutional defect.  Still, the Marine Forests Society asked the Supreme Court to decide the validity of the Commission's previous actions under the prior appointment scheme, contending that those earlier actions were invalid.  The Court, however, saw no need to decide whether the prior structure was unconstitutional and, therefore, saw no need "to clarify the status of the numerous actions that were taken by the Commission" under the prior appointment system.[36]  This task was obviated, the Court reasoned, by application of the de facto officer doctrine: "[E]ven if we were to assume . . . that the prior version of the statutes violated the separation of powers clause, the past actions of the Commission could not properly be set aside on that ground at this time."[37]

As *Marine Forests* illustrates, the de facto officer doctrine serves the public interest against the "crippling" of legislative or administrative operations by collateral challenges to an officer's authority.[38]  Allowing such challenges, the Court explained, could "place in jeopardy many if not all of the actions taken by" the officer over an extended period of time.[39]  "This debilitating effect is avoided if such a challenge is brought in a separate proceeding that focuses directly on the validity of the officer's or commission's status and in which the requested relief, if ultimately granted by a final judicial decision, would apply only prospectively."[40]

---

[34] See *id.* at pp. 493-494.

[35] *Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1 (*Marine Forests*).

[36] *Id.* at p. 53.

[37] *Ibid.*

[38] *Id.* at p. 56.

[39] *Id.* at p. 55, fn. 26.

[40] *Id.* at p. 56; see also *Oakland Paving*, *supra*, 19 Cal.App. at p. 496 ("The very purpose of the doctrine is to protect the public and third persons where officers are assuming to act as such without strict legal right and there is an appearance or color of title, but which is in fact no title").

In our case, since Pepin was physically present at the meeting and statutorily empowered to vote for a successor despite his resignation,[41] the residents of District 1 could justifiably rely on his vote as lawfully securing for them a new representative. Christopher Pikus himself could also rely on Pepin's vote to provide the necessary majority for a valid appointment. And, as a consequence, Pikus's new constituents could rely on the votes and actions of their new representative as valid exercises of authority. Indeed, were we not to apply the de facto officer doctrine to the present challenge to Pepin's vote, it is possible that every action subsequently taken by his successor Pikus throughout the ensuing quo warranto litigation would be subject to challenge as well. Relator's position thus threatens to "defeat the principal purpose underlying the de facto officer doctrine."[42]

Soto protests that *he* had not "acquiesced" in Pepin's claim of office on January 21, 2025.[43] He raised the issue of Pepin's eligibility during the public-comment period of the January 21 meeting; the City Attorney responded with his conclusion that Pepin was eligible to vote; and the City Attorney advised that declaring a vacancy in the District 1 seat would require a majority vote of the Council. It does not appear that any such vote was taken or even proposed, and Pepin continued to participate until Pikus was sworn.

But Pepin's status as a de facto officer does not depend on Relator's personal assent. Rather, because the doctrine's purpose is to serve the public interest, courts look to the public's perception. Is the officer "*reputed* to have official authority to exercise and perform the duties"?[44] Here, that standard was met. The entire City Council, despite being informed of Soto's objection, followed the City Attorney's advice and acquiesced in Pepin's participation in the vote.[45]

---

[41] Gov. Code, § 36512, subd. (e)(1).

[42] *Marine Forests*, *supra*, 36 Cal.4th at p. 55, fn. 26 (describing the chaos that could result from failing to apply the de facto officer doctrine).

[43] Relator's Reply Memorandum, p. 3.

[44] *Oakland Paving*, *supra*, 19 Cal.App. at p. 490, italics added; see also *Consumers' Salt Co. v. Riggins* (1929) 208 Cal. 537, 541 ("A de facto officer is one who has the reputation and position of the officer he assumes to be, and yet is not entitled to the office in point of law").

[45] No action was taken by the Council, or even proposed, concerning Pepin's continued participation in Council business, and he continued to participate until Pikus was sworn. (See Jan. 21 mins., *supra*, at pp. 2-6; City of Poway, City Council Regular Meeting Video (Jan. 21, 2025), https://tinyurl.com/54jzb67e; see also, e.g., *Ensher*, *supra*, 238 Cal.App.2d at p. 256 ["Acquiescence is shown by the fact that the state did not proceed against the judge"].)

25-301

The Supreme Court has made clear that raising an objection to an office holder, standing alone, will not suffice to defeat application of the de facto officer doctrine. The doctrine instead contemplates "that a valid challenge to the officer's qualifications must be raised *and resolved* in a separate proceeding."[46] In *Marine Forests*, the Court rejected arguments that Commission actions under the old system were vulnerable to challenge even if contemporaneous objections had been raised: "[E]ven with regard to those cases in which a timely separation of powers challenge to the Commission's composition has been raised and that remain pending either before the Commission or the courts, we conclude that under the 'de facto officer' doctrine prior actions of the Commission cannot be set aside on the ground that the appointment of the commissioners who participated in the decision may be vulnerable to constitutional challenge."[47] *Marine Forests* leaves little doubt, then, that Soto's protestations to the City Council are insufficient to defeat the validity of Pepin's vote.

Our criteria for deciding whether to grant leave to sue in quo warranto are whether the application presents a substantial question of law or fact, and whether judicial resolution of that question would serve the public interest.[48] Here, Relator's challenge to the validity of Pepin's vote is not viable under the de facto officer doctrine. The California Supreme Court has made clear that California courts adhere to the doctrine.[49] Accordingly, barring extenuating circumstances, we may reasonably expect a lower court entertaining Relator's complaint in quo warranto to honor the doctrine as well.[50]

### 3. The Public Interest Is Not Served by Allowing Relator's Complaint to Proceed

"In the absence of a substantial question of fact or law requiring judicial resolution, we find there is no public purpose sufficient to warrant an action in quo

---

[46] *Marine Forests*, *supra*, 36 Cal.4th at p. 55, italics added.

[47] *Id.* at p. 54; see *id.* at p. 55, fn. 26 (describing the chaos that could result if the de facto officer doctrine could be defeated by the simple raising of an objection at a Commission proceeding).

[48] *People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto* (2024) 102 Cal.App.5th 602, 619; *Rando*, *supra*, 228 Cal.App.4th at pp. 878-879; 87 Ops.Cal.Atty.Gen., *supra*, at p. 31.

[49] *Bunker Hill*, *supra*, 61 Cal.2d at p. 42 ("The de facto doctrine in sustaining official acts is well established").

[50] See *Fair Political Practices Com'n. v. Californians Against Corruption* (2003) 109 Cal.App.4th 269, 280, citing *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.

25-301

warranto."[51]  Indeed, the very basis for applying the de facto officer doctrine here to safeguard the official acts of Councilmember Pepin—and derivatively, those of Councilmember Pikus—is the public's interest in stability and certainty of legislative and administrative actions.  We are unaware of any California judicial decision, or any opinion of this office, wherein application of the de facto officer doctrine was declined in favor of a different weighing of the public interest.[52]

Because Councilmember Pepin's vote for Pikus is conclusive as a matter of law under the de facto officer doctrine, and because adherence to that doctrine serves the public interest, we conclude that the application for leave to sue should be DENIED.

---

[51] 107 Ops.Cal.Atty.Gen. 79, 85 (2024); see also 96 Ops.Cal.Atty.Gen. 48, 49 (2013) ("[W]e are accorded broad discretion in determining whether to grant or deny a quo warranto application, and the existence of a 'debatable' issue or a legal dispute does not necessarily establish that the issue or dispute requires judicial resolution through the quo warranto procedure.  Instead, the overall public interest is the guiding principle and paramount consideration in our exercise of discretion," footnotes omitted, quoted in *Rando*, *supra*, 228 Cal.App.4th at p. 876).

[52] We note that the Court in *Marine Forests* did not squarely foreclose the possibility that a ground for an action's invalidity might overcome application of the de facto officer doctrine, only that "[i]n light of [the doctrine's] objective," the constitutional objection raised about the Commission's structure was "similar to other claimed defects . . . to which the de facto officer doctrine has been applied." (*Marine Forests*, *supra*, 36 Cal.4th at pp. 55-56.)  We need not determine whether a California court would ever decline to apply the de facto officer doctrine due to extraordinary circumstances, as no such circumstances are presented here.

25-301